MARY F. HILL, Respondent, v. CITY OF SEDALIA, Appellant.

Kansas City Court of Appeals, January 20, 1896.

1. **Dedication**: ACTS OF PARTIES : TIME.  No specific length of possession is necessary to constitute a valid dedication.  The assent of the owner to the public use and the actual enjoyment by the public for such time that public accommodation and private rights would be materially affected by the interruption of the enjoyment, is sufficient; and the acts of the parties in this case are *held* to be a dedication.

2. ————: ACCEPTANCE : LIABILITY OF CITY.  When a municipal corporation has treated a piece of land within its limits as a public street, it is chargeable with the same duties as though it were legally laid out and liable for damages for neglect in keeping it in condition; and in this case the evidence shows an implied acceptance of the dedication.

3. **Trial Practice**: CITY SIDEWALK : TENDENCY OF EVIDENCE.  Where the tendency of plaintiff's evidence is to prove a sidewalk unsafe for travel, the trial court is justified in submitting the question to the jury.

4. ————: INSTRUCTIONS : STREETS AND SIDEWALKS.  Instructions as to the liability of the city for the condition of its streets and sidewalks though criticised, are held to be insufficient to disturb the verdict.

5. **Municipal Corporations**: STREETS AND SIDEWALKS.  Cities are bound to keep the public traveled streets and the sidewalks in a reasonably safe condition without regard to who constructed them or whether the city ordered their construction.

6. **Damages:** MEASURE OF : MARRIED WOMEN : LIABILITY FOR TREAT-
MENT. An instruction that the plaintiff, a married woman, could
recover for medical expenses incurred in her treatment for an injury
resulting from the negligence of the city, is approved, since under
sections 6864, 6869, Revised Statutes, 1889, she can make a valid
contract with a physician and her property is subject to execution
for the payment of such contract.

7. **Appellate and Trial Practice:** PERSONAL INJURY : PERSONAL
EXAMINATION. On a trial for damages for personal injury the trial
court may order the plaintiff to submit to a personal examination, but
such proceeding rests in the sound discretion of the trial judge, with
which the appellate court will not interfere, unless manifest abuse is
shown; and in this case it is *held* the trial court did not abuse its dis-
cretion in refusing to order plaintiff, a woman, to submit to such
examination.

8. **Damages:** EXCESSIVE : VERDICT. In this case the plaintiff, fifty-
nine years of age and in good health and a weaver supporting her
family, was severely injured; and eight months thereafter still suffer-
ing and unable to perform her daily labor as formerly, a verdict of
$2,300 is not considered excessive.

9. **Municipal Corporations:** CITIES OF THE THIRD CLASS : COSTS :
STATUTE. The costs in this case should not be taxed against the
plaintiff since she complied with section 104 of the charter of cities
of the third class, Laws of 1893, page 89; and two weeks was a
reasonable time for the city council to have passed upon her claims
and their reference of her claim to a committee was for the pur-
pose to gather evidence to defend the suit.

*Appeal from the Pettis Circuit Court.*—HON. RICHARD
FIELD, Judge.

AFFIRMED AND REMANDED (*with directions*).

*E. J. Smith* for appellant.

(1) Was there or not such a dedication of the
ground where the accident occurred, for a street, and
acceptance thereof by the city, as to make the city lia-
ble for the condition of the sidewalk there? We say
no. 2 Dillon, Municipal Corporations [2 Ed.], sec.
505, with note and cases cited. *Hunter v. Weston*, 111
Mo. 176; *Skrainka v. Oertel*, 14 Mo. App. 474, and

cases; *Moore v. Cape Girardeau*, 103 Mo. 470, and cases; *Golden v. Clinton*, 54 Mo. App. 100, and cases. Subsidiary to this we say it was error for the court to change defendant's instruction number 3, and give it of his own motion. That instruction makes the simple use by the public, without regard to time, circumstances, or how much, an acceptance by the city, and binds the city. Such is not the law. For the same reasons defendant's first and third instructions should have been given. *Harrington v. Sedalia*, 98 Mo. 583, and the cases cited above. This is no such case as *Streeter v. City of Breckenridge*, 23 Mo. App. 244; *Pierce v. Town of Lutesville*, 25 Mo. App. 317. (2) On the admitted facts, there was no such defective condition of the walk as to justify a recovery, and defendant's tenth instruction should have been given. *Raymond v. Lowell*, 6 Cush. (60 Mass.) 524; *Winn v. Lowell*, 1 Allen (83 Mass.), 177; *Young v. Kansas City*, 45 Mo. App. 600; *Salmon v. Trenton*, 21 Mo. App. 182. (3) The instruction number 1½ for plaintiff makes it the duty of the city to keep all its streets and sidewalks in good repair, and that without regard to who put the walk there, or by what authority it was put there. Such is not the law. *Craig v. Sedalia*, 63 Mo. 417; *Bassett v. St. Joseph*, 53 Mo. 290; *Brown v. Glasgow*, 57 Mo. 156; *Harrington v. Sedalia*, 98 Mo. 583. (4) Instruction number 2 for plaintiff is vicious. (5) Plaintiff's fifth instruction is bad, in that it makes the city responsible for a walk put there by others without its authority. Such is not the law. *Harrington v. Sedalia*, 98 Mo. 583. It is further bad in saying, if the walk remained there with knowledge of the city, when there is no evidence of knowledge, as said by us already. (6) Plaintiff's eighth instruction, as to measure of damage, is wrong, in that it authorizes a recovery for medical expenses, when, if any recovery

for this, it can only be by her husband, who alone is responsible for it. Dr. Cowan swore it was not paid. *Kennerly v. Martin*, 8 Mo. 698; *Music v. Dodson*, 76 Mo. 624; *Howard v. Barker*, 52 Vt. 429, 36 Am. Rep. 762, and note. That instruction is wrong in that it directs the jury to take into consideration plaintiff's "condition in life.' *Hinds v. City of Marshall*, 22 Mo. App. 208. (7) It was error to overrule defendant's motion to require plaintiff to submit to an examination before the trial, and it was especially wrong, after overruling said motion, to allow Dr. Cowan to testify as to the result of his examination just before the trial. *Shepard v. Railroad*, 85 Mo. 629; *Sidekum v. Railroad*, 93 Mo. 400; *Owens v. Railroad*, 95 Mo. 169; *Norton v. Railroad*, 40 Mo. App. 642; *Kinney v. Springfield*, 35 Mo. App. 97. If we can not examine plaintiff she may refuse to produce her doctor. Then medical testimony may be entirely excluded. *Streeter v. City of Breckenridge*, 23 Mo. App. 244. (8) The court should have made a general order taxing all costs against the plaintiff, and this court should now make such order. Section 104, of city charter, Acts, 1893, p. 89. (9) The verdict should also be set aside because it is against the instructions and excessive and unsupported by the evidence and shows the jury was prejudiced. *Burdom v. Trenton*, 116 Mo. 358; *Hinds v. City of Marshall*, 22 Mo. App. 208; *Fairgrieve v. Moberly*, 29 Mo. App. 141, *Fairgrieve v. Moberly*, 39 Mo. App. 31; *Smith v. City of Butler*, 48 Mo. App. 663; *Sawyer v. Railroad*, 37 Mo. 240; *Adams v. Railroad*, 100 Mo. 555; *Gurley v. Railroad*, 104 Mo. 211.

GILL, J.—This is an action for damages because of personal injuries received by the plaintiff while passing over a defective sidewalk in Sedalia. Both parties are complaining; the defendant, on account of numer-

ous alleged errors in the trial of the main case, and the plaintiff, on account of the court's action in taxing costs against her.

On a trial by jury, plaintiff had a verdict and judgment for $2,300, and from this defendant appealed. The principal facts will be mentioned in the course of the opinion.

I. Defendant's first, and perhaps main, contention is, that plaintiff was not injured on one of defendant's streets; that there was no dedicated public highway at the point where the plaintiff fell. A careful reading of the entire testimony shows this contention to be without merit. We have before us a plat of Twelfth street, as it runs from the tracks of the Missouri, Kansas & Texas Railroad, on the west, to a point near the eastern city limits. It is shown by the evidence to be a public traveled street, sixty feet wide, with a thickly settled population residing on both north and south sides, and had been so for quite a number of years before this accident. Plaintiff was injured while walking along a sidewalk upon the south side of this street and some three blocks east of the railroad tracks. At this place, one Zener formerly owned an unplatted tract, fronting on the south side of Twelfth street five hundred and twenty-eight feet and with a depth of one hundred and sixty-five feet, the north line running to the center of said Twelfth street. He bought it in 1874, and during the several years thereafter, sold it off in seven parcels, beginning the description in every case thirty feet south of his north line; in some conveyances he agreed to leave a street in front; in others, he conveyed to the grantee an undivided portion of the thirty-foot strip, but in perhaps one or two deeds made no mention of said strip. The evidence in this behalf conclusively shows that it was the intention of Zener and his grantees to throw out this strip of thirty

feet for use as a part of Twelfth street. And, further, the proof is, that about the year 1883, and pursuant to the requirements of a city ordinance, this sidewalk was constructed and it was built on the south line of said thirty feet and along just outside the yard fences of several dwellings that had been erected on the Zener block. This sidewalk was made to conform to that along the street east and west, on the same straight line, and on the south side of what was then understood to be a sixty-foot street. These and other circumstances detailed in the evidence conclusively established a common intention of all concerned in this unplatted block, during a space of twelve years or more, to set apart the north thirty feet thereof as part of said Twelfth street. It was so treated and recognized by everybody. Such conduct and clear intent of the parties owning this abutting land, brought about, as to them, a dedication to public use, as complete as if platted and filed in the proper recording office. Though not a statutory dedication, it was one at common law and just as effective. "No specific length of possession is necessary to constitute a valid dedication; all that is required is the assent of the owner of the soil to the public use, and the actual enjoyment by the public of the use for such a length of time that the public accommodation and private rights would be materially affected by a denial or interruption of the enjoyment." 2 Dill. Mun. Corp., [4 Ed.], sec. 631.

Defendant's counsel is correct when he urges that there must yet be, in addition to a dedication by the owners, an *acceptance* on the part of the city, or the public, before it can be held for a failure to keep in repair. But in this, the case is likewise made complete by the evidence. In order to establish acceptance by the city, it was not necessary to show the passage of an ordinance to that effect. As was said by us in *Golden*

*v. City of Clinton*, 54 Mo. App. 100: "The law is settled that when a municipal corporation has treated a piece of land within its limits as a public street, taking charge of it as such, etc., it is chargeable with the same duties as though it was legally laid out; and it is liable for damages by reason of neglect to keep the same in condition for travel." We have in such case an *implied* acceptance. In the matter of this dedication, the proof is ample that the city met this proposition of Zener and his grantees (when they fenced out this thirty-foot strip and added it to the thirty-feet on the north side of the street and thereby secured a sixty-foot street, as it existed on both sides, east and west), and accepted the same and forthwith proceeded to and did treat it as part and parcel of the highway. In the year 1883, the city, in the most solemn manner, committed itself to this addition of thirty feet to the street, at the point in question. The common council passed an ordinance, and it was approved by the mayor, requiring the property owners on that particular part of Twelfth street to construct a sidewalk; and it would seem almost conclusive (though the evidence is not entirely clear as to that), that the sidewalk in question was built, in pursuance of such order from the city authorities. While the body of this ordinance was rather vague and indefinite in the matter of the beginning point on the east, the title of said ordinance is yet clear and unambiguous, and clearly shows that the city meant to, and did, order the construction of sidewalks along the south side of Twelfth street, from Hancock avenue west to the Missouri, Kansas & Texas Railroad tracks; and this necessarily included a sidewalk along and upon the strip in question. Without further discussion, then, of this first point, we hold that the proof of dedication and acceptance of this part of Twelfth street was so over-

whelming and complete that the court would have been justified in declaring the same as matter of law.

II. Defendant's second point is related to the one just noticed, in that complaint is made of the court's refusal to take the case from the jury. It is contended that there was no such defective condition of the walk as to justify a recovery, and that defendant's tenth instruction to that effect should have been given. This contention, too, is untenable. Plaintiff's evidence tended to prove that the condition of the sidewalk was such as not to be reasonably safe for travel; that the walk was constructed of two inch boards laid crosswise and resting on stringers; that the side, or edge, of one of these was laid on top of the one adjoining and in such a way as to project above the common level, so as to cause people to stumble and fall. It was fastened down in that dangerous condition and had been so for many months. At all events, the condition of the walk was such as justified the court in submitting the question to the jury, as it did, and leaving them to determine whether or not the walk was, on that account, rendered reasonably unsafe for the use of pedestrians. *Young v. City*, 45 Mo. App. 600.

We notice other objections suggested as to plaintiff's instructions numbered 1, 1½, 2, and 3, and find no substantial error. These instructions practically embody the law applicable in such cases; and even if defendant's counsel be right in some of his verbal criticisms, they are of such minor importance as not to warrant a disturbance of the judgment.

Fault is found with plaintiff's instruction numbered 5, in that it makes the city responsible for the condition of a sidewalk put there by the adjacent property owners, without the direct orders of the city. There was no error in giving this instruction. The city was bound to keep its public traveled streets, and

the sidewalks thereon, in a reasonably safe condition; and it matters not who may construct the sidewalks thereon, or, indeed, whether the city shall order the same. If such walks are built so as to constitute an obstruction, or get in such condition as to endanger the life or limb of the pedestrian, it becomes the city's duty, after having notice thereof, express or implied, to remove the obstruction or so repair the same as to make it reasonably safe. This is a case quite different from that cited by defendant's counsel, *Harrington v. City*, 98 Mo. 587. The point there was that the city had never opened the street for the use of the traveling public.

Some objections are made also to the instruction in relation to the measure of dam ages. We think there is nothing substantial in any of these. The jury was, in effect, told to compensate the plai ntiff for her physical injuries, if any received; for the mental and bodily pain endured, if any; such permanent damages, if any, that may result to her in the future; *"as well as all medical expenses incurred in and about the treatment of her case."* The testimony shows that Mrs. Hill, on her own account, employed the physician to attend her; that his charges were only $10, but that they had not been paid. It seems to be the defendant's contention, that compensation for this medical treatment could only be recovered from plaintiff's husband, that she, as a married woman, was not liable therefor; and therefore, as such expenses were not a valid charge against her, the plaintiff should not be allowed to recover the same of the defendant. This position finds support in some of the early decisions of this state (*Kennerly v. Martin*, 8 Mo. 698); but under later amendments to the married woman's statute, the plaintiff had the power to contract, as she did, on her own account, for these medical services and such

charges were enforceable against her separate property, and such is the character of the money she might recover in this action for injuries to her person. R. S. 1889, secs. 6864 and 6869. By virtue of said first section, she could make a valid contract for the employment of a physician, and could be sued thereon; and under the provisions of section 6869, her said property would be subject to execution for the payment of such debt contracted during marriage. So, then, we hold this point against the defendant's contention.

III. Further complaint is made that the trial court erroneously declined, on defendant's motion, to compel the plaintiff to submit her body to a personal examination by medical experts. It was the former rule in this state, that no such personal examination would be ordered on motion of the opposite party. *Lloyd v. Railroad*, 53 Mo. 509. Later decisions, however, have conceded the right in the trial court, to order a personal examination, but have rested its exercise in the sound discretion of the trial judge, with which the appellate court will not interfere, unless a manifest abuse is shown. See authorities cited in briefs of counsel. In the case at hand, we are not prepared to say that there was an abuse of discretion. This lady plaintiff seems to have called in a firm of most reputable physicians, one of whom was present at the trial and gave his testimony in a very fair and impartial manner. Besides these, numerous lady witnesses were present and testified fully and without restraint to the plaintiff's condition before and after her fall on the sidewalk. As suggested in one of the cases decided by the supreme court, it is very embarrassing to a lady of ordinary sensibilities, to be compelled to submit her person for examination to any committee of men, or to any other than her own fam-

ily physician, and the reasons therefor ought to be very cogent and pressing before it should be required.

IV.   Neither are we prepared to say that the damages awarded ($2,300) are excessive.  The evidence tends to prove that the plaintiff received serious and painful injuries.  She was at that time fifty-nine years of age; was a lady in good health and able to perform her household duties, and was in the habit of weaving as a means of supporting her family.  Her fall was attended and followed by great pain; her face, breast, hands, arms and legs so crushed and bruised, that she was for weeks confined to her bed and threatened at the time with pneumonia.  Besides, the testimony tends to prove that one of her ribs was broken; and even at the trial, eight months after the fall, she was still suffering and unable to perform her daily labor, as she formerly did.  If the testimony of herself, the attending physician, and the ladies who visited her, is to be credited, the amount awarded plaintiff is not in excess of a reasonable compensation.

V.   Lastly, we will dispose of the matter of taxing costs.  After the verdict in plaintiff's favor had been rendered, the lower court, on defendant's motion, taxed all the costs then accrued against her, and of this she now complains.  This rather anomalous order of the trial court is based on section 104 of the charter of cities of the third class, to which Sedalia belongs.  This section provides that all claims against the city shall be presented in writing, verified by the oath of the claimant, stating in detail the nature thereof, that it is just, etc.; and that "no costs shall be recovered against the city in any action brought against it for any unliquidated claim which has not been presented to the council to be audited."  On August 30, 1894, Mrs. Hill's attorneys prepared for her a written claim, verified by affidavit, fully stating the nature thereof, etc., and said

attorneys at once delivered same over to the city attorney, with a written request that it be filed and acted upon by the city authorities. In this request by the plaintiff's counsel, they suggested, as a reason for immediate action, that the fall term of court was approaching and that it was desirable to have the claim passed on at once, so that suit might be brought by September 15, the last day of service. The city attorney at once (September 1), filed the claim, with letter of plaintiff's attorneys, with the city clerk, accompanied by this written instruction:

"CITY CLERK:—Lay this before the city council and tell them to *reject it*. But I wish they would have a committee look it up *for use in the defense*.

(Signed)          "E. J. SMITH."

The city council met September 3, and, as requested by the city attorney, referred the matter to a committee. Immediately on being so referred, plaintiff's attorneys sought to have the committee act on the claim, but it was not done until a meeting of the council on September 17, when an adverse report was made, and the claim rejected. In the meantime (on September 15), plaintiff's petition was filed and a writ sued out and served.

In argument, oral and printed, plaintiff's counsel (Mr. Lamm), took the position that the claimant had complied with the terms of the above quoted statute, when she had merely *presented* her claim to the council, and that she was not required, in order to recover costs, to wait for an investigation and answer thereon. We think this is too narrow a construction, even in view of the rule invoked, to wit, that, as the statute is in derogation of the common law rule as to costs, it should be strictly construed. The manifest purpose of this statute is to give the municipal corporation a reasonable opportunity to investigate such claims and com-

promise or settle the same, thereby avoiding the unnecessary costs and expenses of litigation. We are of the opinion also, contrary to the contention of plaintiff's counsel at the oral argument, that this claim of Mrs. Hill comes clearly within the designation of "unliquidated claims" which are required to be presented to the council before suit.

Notwithstanding all this, we hold that this plaintiff fairly complied with the foregoing section; and it was error to adjudge the costs against her. She is justly exempted from the payment of these costs on either of two theories. In the first place, defendant had ample time, after the claim was presented to the council, and before the suit was commenced, for reasonable investigation and determination as to whether it would allow or reject it; nearly two weeks having intervened between its presentation and bringing suit. And in the second place, the irresistible inference to be gathered from the record is, that the reference to a committee and time taken after the claim was presented, were not for the purpose of determining on the justness or legality of plaintiff's demand, but solely to permit the committee of the council to gather evidence for the defense of a suit, as was suggested by the city's legal advisor.

We have considered the several objections relating to the court's rulings on evidence, to which our attention is called in defendant's elaborate brief; but find in none of them any grounds for reversal. If error there was, it was entirely harmless.

The judgment will be affirmed, *except* as to the order taxing costs against the plaintiff, and for this error the cause will be remanded, with directions to the circuit court to tax all the costs against defendant. All concur.