LOIS STEALEY, by Next Friend, Appellant, v. KANSAS CITY.

Division Two, February 1, 1904.

1. **Negligence:** INJURY ON SIDEWALK OUTSIDE CITY. A pedestrian can not recover damages for injuries due to the defective and negligent construction of a sidewalk outside the legal limits of the city. The fact that the city supposed at the time the walk was constructed that the city limits had been legally extended to include the street, while in fact that extension had been declared to be illegal and void prior to the accident, does not give the pedestrian any right to charge her injuries to the city.

2. ———: ———: STATUTE. The power conferred by the statute upon cities to "work, grade or macadamize roads, streets and highways leading to and from" them, within five miles of the limits, is a mere license, and does not make them responsible for the manner in which such work is done or for a failure to keep such thoroughfares in good condition.

3. **Judicial Notice:** COUNTY ROAD. The courts will not take judicial notice that a street constructed outside the limits of a city is within five miles of the city limits.

4. **Negligence:** CITY STREET: ESTOPPEL: ULTRA VIRES. Where the sidewalk was not at the time the pedestrian was injured within the city limits, the city was not estopped from denying that it was, because of the fact that it had by ordinance ordered it to be constructed. The ordinance was *ultra vires*, and if the city had no power to enact it no act of its can have the effect to estop it to allege its want of power to enact such ordinance.

Appeal from Jackson Circuit Court.—*Hon. James Gibson*, Judge.

AFFIRMED.

*Henry J. Latshaw, Jr.,* for appellant.

(1) The passage of an ordinance by a municipality providing for the laying of a sidewalk on a street is a recognition by the city of the street as a public street of the city which it is bound to keep in repair. Hill v. Sedalia, 64 Mo. App. 494; Byerly v. Anamosa, 79 Iowa 204; Seymour v. Salamanca, 137 N. Y. 364. And this is true whether the highway was inside or outside the city limits, provided it was not more than five miles outside. This is so because of the following statute in force at the time: R. S. 1889, sec. 7846. The court will take judicial notice of the amendment to the city charter adopted December 2, 1897, by which Denver avenue was brought within the city and it will be seen by reading it that it does not take in territory more than five miles from the city limits so that Denver avenue is within the five-mile limit. Hence we have a distinct recognition by ordinance on the part of Kansas City that Denver avenue was a public highway of the county before the territory through which it runs was annexed. (2) Even though Denver avenue was not a public street, defendant is estopped from denying that on July 8, 1898, the sidewalk was a public sidewalk. For many years prior to July 8, 1898, defendant held this sidewalk out to the public as a public sidewalk upon a public street. There were no indications of any kind or nature that it was not upon a public street. It was laid by defendant itself in October, 1890, in the same manner and of the same material as all other second-class sidewalks were laid by defendant. It was used at all times as a public sidewalk by the general public with defendant's consent.

Under these circumstances it is immaterial whether or not as a matter of fact it was or was not upon a public street. The city owed the public the same duty of repair in either instance. O'Malley v. City of Lexington, 74 S. W. 890; Village of Mansfield v. Moore, 124 Ill. 133; Beach on Public Corporations, sec. 1499. (3) Denver avenue was a public highway of the county before it was legally brought within the city and became a public street of the city by the annexation without further act on the part of the city. The agreed statement of facts recites that it was used as a street continuously for a number of years prior to the accident. While as a matter of fact it was more than ten years since the land was platted and the street dedicated on the plat, yet it has been held by this court that user for a less period than ten years, where the intention of the owners to dedicate clearly appears "*aliunde*," is sufficient to make a dedication and acceptance by user. Bauman v. Boeckeler, 119 Mo. 189; Johnson v. St. Joseph, 71 S. W. 106; Zimmerman v. Snowden, 88 Mo. 218; State v. Davis, 26 Mo. App. 75; State v. Proctor, 90 Mo. 334; Brown v. Railroad, 20 Mo. App. 427.

*R. J. Ingraham* and *L. E. Durham* for respondent.

(1) Kansas City had no power to establish or improve Denver avenue as a highway outside its limits. Art. 3, sec.1, subdiv. 5, city charter; art. 9, sec. 2, city charter; St. Louis v. University, 88 Mo. 155. Section 7846, Revised Statutes 1889, has no application to Kansas City. State ex rel. v. Kansas City, 99 Mo. 352. (2) The passage of ordinance No. 2345 was, therefore, *ultra vires* and the city is not estopped from denying that Denver avenue was a public highway. State ex rel. v. Murphy, 134 Mo. 548; St. Louis v. Davidson, 102 Mo. 149; Scovill v. Thayer, 105 U. S. 143; Railroad v. Railroad, 118 U. S. 317. (3) Kansas City had not in any way accepted Denver avenue prior to plaintiff's injury

and is therefore not liable.    Downend v. Kansas City, 156 Mo. 60; Carle v. DeSoto, 156 Mo. 443; Johnson v. St. Joseph, 96 Mo. App. 663; St. Louis v. University, supra.

BURGESS, J.—This is an action for ten thousand dollars damages (for which plaintiff, a minor, sues by her next friend), alleged to have been sustained by her on a plank sidewalk on a street in Kansas City.

The petition alleges that in the evening of July 9, 1898, the plaintiff, Lois Stealey, then a girl about fourteen years old, was walking with several other persons south upon a plank sidewalk on the west side of Denver avenue, when she stepped with her right foot into a hole in the sidewalk, caused by a broken board, and received severe bodily injuries.

The answer was a general denial.

On the trial plaintiff was nonsuited on the ground that the evidence failed to show that Denver avenue was a public street in Kansas City at the time of the accident.    In due time plaintiff filed her motion to set aside the nonsuit and for a new trial, which being overruled, she saved her exceptions, and brings the case to this court by appeal for review.

The hole in the sidewalk had existed for several months prior to the accident.    On December 4, 1889, Denver avenue was, and for some time prior thereto, had been, a public highway in Jackson county, outside of Kansas City at that time.    On that day the city undertook to annex certain territory including Denver avenue. On January 19, 1891, this court held the extension illegal.    In the meanwhile, viz., in October, 1890, the sidewalk on which plaintiff was injured was laid by respondent pursuant to ordinance No. 2345, of Kansas City, approved September 10, 1890.    The extension having been declared illegal, Denver avenue remained outside the city until December 2, 1897, when the city

again extended its limits and again took in Denver avenue.

"The sidewalk where plaintiff was injured was on the date of her injuries open to general public travel and had been so used for a number of years continuously prior to said accident. There were no signs or warnings of any kind to notify the public that said sidewalk was not on a street or avenue in said city, and the sidewalk where plaintiff was injured was at all of said times used by the general public for the purpose of travel in the ordinary manner."

From the time that the Supreme Court held the ordinance extending the limits of Kansas City invalid, and up to and including the date of plaintiff's injury, defendant city did not attempt to exercise any jurisdiction or control over said street.

Plaintiff contends that the passage of the ordinance by defendant city providing for the laying of a sidewalk on Denver avenue was a recognition by the city of such street as a public street which it was bound to keep in repair.

It seems to be well settled that where a city by ordinance has required a street within the city limits to be improved by the construction of a sidewalk therein, and that in pursuance of such an ordinance a sidewalk is constructed, the city is bound to keep it in repair and is liable in damages for injuries occasioned by its failure to do so. [Hill v. Sedalia, 64 Mo. App. 494; Golden v. City of Columbia, 54 Mo. App. 100; Byerly v. Anamosa, 79 Iowa 204; Seymour v. Salamanca, 137 N. Y. 364.] But it is clear from the record that at the time of the injury complained of Denver avenue was not within the corporate limits of defendant city. By section 1, subdivision 5, of the city charter of Kansas City the common council is given exclusive control and power over the streets and sidewalks of the city. By section 2 of article 9, the city is given power to cause to be graded all streets, and to construct and re-construct all

sidewalks within the city limits; but no power is con-
ferred by the charter upon the city to grade or improve
roads or streets, or to construct sidewalks beyond or
outside of the city limits.

The City of St. Louis v. St. Louis University, 88
Mo. 155, was an action of ejectment for the possession
of a street, which was dedicated by the owner to the
public in 1821. In 1882 by the charter of the city its
limits were fixed so as to leave the street in question out-
side of the city limits. While it was thus outside the
limits the city surveyor was, by the proper authorities,
ordered to, and did make and return a plat to the board
of aldermen, of the city, showing the street on the map
as a public highway open for travel. This act of the
city, it was contended by plaintiff, constituted an accept-
ance of the street. The court says:

"The city had no jurisdiction. It could then no
more accept a dedication of this street than of one miles
distant from the city limits. . . . The map made by
Paul and its approval by the board of aldermen of the
city, have no legal significance whatever, for it is a con-
ceded fact that when it was made and approved the land
was not within the limits of the city. The approval of
the map was an act of the most equivocal character, so
far as it relates to that portion of the land included in it
beyond the city limits. But even if it was as clear as
sunlight that the board meant by that approval to accept
on behalf of the city the dedication made by Conner,
it was a matter not within their jurisdiction, and in
which the city then had no concern."

But plaintiff insists that whether Denver avenue
was within the corporate limits of the city or not at the
time of her injury, as it was within five miles of the
city, and was recognized by the ordinance providing for
laying the sidewalk in question upon it, courts will
take judicial notice that the street was within five miles
of the corporate limits at the time the injury occurred,

and that by the provisions of section 7846, Revised Statutes 1889, defendant was bound to keep the sidewalk in reasonable repair in order to prevent injury to pedestrians traveling along and upon it, just as if, in fact, it was within the corporate limits of the city.

Said section reads as follows:

"It shall be lawful for the municipal authorities of cities, towns and villages in this State to work, grade or macadamize roads, streets and highways leading to and from such cities, towns or villages in such manner as may be provided by ordinance by the proper authorities of any such city, town or village; but this privilege shall not extend to a greater distance than five miles from the corporate limits of such city, village or town, and shall not be construed so as to allow any obstruction to or to interfere with the free use of any such road, street or highway by the public, except so far as may be necessary while working, repairing or grading such road or highway."

Even conceding for sake of the argument only, that the statute quoted applies to all cities, it only confers upon them the right to "work, grade or macadamize roads, streets and highways leading to and from such cities, towns or villages." No control whatever of them otherwise than for the purposes indicated is conferred upon such cities, and they can not be held to respond in damages for injuries sustained by reason of their failure to keep them in repair.

The power conferred by the act is a mere license to work, grade or macadamize thoroughfares leading to and from such cities, towns or villages, and they are not responsible for the manner in which such work is done, or for failure to keep any such thoroughfare in good condition unless the action is given by statute. [Reardon v. St. Louis County, 36 Mo. 555, and subsequent cases; Clark v. Adair Co., 79 Mo. 536.]

Nor do we think this court can take judicial notice that Denver avenue is within five miles of the city limits.

While this court will take judicial notice of the streets of Kansas City and their relation to each other and the direction in which they run (Brady v. Page, 59 Cal. 52), it will not take judicial notice that a road or public highway outside of the corporate limits of said city is within five miles thereof.

Plaintiff also contends that although Denver avenue was not a public street, defendant is estopped from denying that on July 9, 1898, the walk was a public sidewalk. Upon this point plaintiff relies upon O'Malley v. City of Lexington, 99 Mo. App. 695, and Village of Mansfield v. Moore, 124 Ill. 133, but both of those cases were with respect to sidewalks within the limits of the municipalities and were correctly decided.

In the case of the Mayor, etc., of the City of Albany v. Cunliff, 2 Comst. 165, it was ruled that where the officers and agents of the city assumed to build a bridge under the authority of a statute not constitutionally passed, and the bridge fell in consequence of the negligent construction thereof, the corporation was not liable in an action at the suit of a person injured by the accident.

In the case at bar, however, the sidewalk was not at the time of the accident within the city limits; hence, the ordinance directing it to be constructed was *ultra vires* of the city, and it is not, therefore, estopped in any manner by the passage of said ordinance and the construction of the walk. In State ex rel. v. Murphy, 134 Mo. 548, it was said:

"There is no doubt that the doctrine of estoppel is, as a general rule, alike applicable to corporations and individuals. It can not, however, be applied to validate a contract which the corporation had no power to make. The doctrine is thus declared. 'Where a municipal corporation enters into a contract, which it has the power to make, the doctrine of estoppel applies to it with the same force as to individuals.' [Union Depot Co. v. St. Louis, 76 Mo. 393.] The rule is thus given by Bigelow:

'If the act undertaken was in and of itself *ultra vires* of the corporation, no act of the body can have the effect to estop it to allege its want of power to do what was undertaken.' [Bigelow on Estoppel (5 Ed.), pp. 466, 467. See, also, Scovill v. Thayer, 105 U. S. 143; Thomas v. Railroad, 101 U. S. 86; Railroad v. Railroad, 118 U. S. 317.]''

Finding no reversible error in the record, the judgment is affirmed. All of this Division concur.