**ETHEL PICKETT, a widow, v. CITY OF JACKSONVILLE, a municipal corporation.**

20. So. (2nd) 484
January 16, 1945
Rehearing denied January 29, 1945

January Term, 1945
Division A

*John E. Lake,* for appellant.

*Stockton, Ulmer & Murchison* and *Wm. A. Carter,* for appellee.

CHAPMAN, C. J.:

This appeal is from a final judgment on demurrer in behalf of the defendant below (appellee here) entered in the Circuit Court of Duval County, Florida. The record discloses that plaintiff below filed some two or three declarations in the

cause, but the only amended declaration presented by the record and considered here was filed on August 19, 1944, and the defendant's demurrer thereto was sustained and an appropriate order and final judgment entered on September 7, 1944. Our review here of this ordered, logically, presents the legal sufficiency of the above mentioned amended declaration.

Pertinent provisions of the amended declaration are viz:

"That the plaintiff is the mother of Lester Pickett, who at the time of his death was of the age of about twelve years, whose father had before that time departed this life; that the defendant is a municipal corporation.

"That about the 18th day of June, 1943, the defendant owned and operated a pool for swimming in Springfield Park in Jacksonville, Florida and charged a fee for the use thereof; that on the said day the said Lester Pickett paid the defendant for the right to use the said pool, put on his bathing suit and entered the pool and swam therein; that it was then and there the duty of the defendant to exercise ordinary care to provide a reasonably sufficient number of competent attendants to insure the safety of the said Lester Pickett while he was using the said pool and to exercise ordinary care to make reasonable use of the safety equipment with which the pool was equipped at the time of the happening of things hereinafter complained of and to exercise ordinary care to be prepared to rescue Lester Pickett when he got into a position or condition of danger and the defendant knew thereof or in the exercise of ordinary care should have known thereof."

The alleged negligence of the defendant consisted in (1) a failure to provide a sufficient number of competent attendants about the pool; (2) only two attendants were provided by defendant for about 250 persons then using the pool; (3) that the two attendants so provided failed in the performance of their duty; (4) the perils then surrounding Lester Pickett would have been observed but for the carelessness of the attendants; (5) the defendant failed to use the safety equipment with which the pool was equipped; (6) the watch tower from which the pool and the bathers, inclusive of Lester Pickett, were observable was not used; (7) the perils or danger then surrounding Lester Pickett would have been

appreciated by the proper use of the watch tower or had the attendants present performed their duties; (8) the number of attendants supplied by the defendant were inadequate to the exercise of ordinary care due to the 250 bathers, inclusive of Lester Pickett. These allegations of negligence appearing in the amended declaration on demurrer were admitted as true for the purpose of a ruling thereon.

The grounds of the demurrer are viz: (1) the amended declaration fails to state a cause of action; (2) the allegations of negligence were legally insufficient; (3) it affirmatively appears that the defendant provided two attendants at the swimming pool; (4) the physical disabilities of Lester Pickett when in his perilous condition are not alleged; (5) it is not alleged that the two attendants provided failed to discharge their duties; (6) the allegations of the amended declaration make the defendant an insurer of the safety of Lester Pickett; (7) facts constituting a breach of duty on the part of the defendant as to the proximate cause of the injury and death are not alleged; (8) it is not alleged that the attendants provided in the exercise of ordinary care could have prevented Lester Pickett from drowning; (9) gross negligence must be alleged. See Section 481 of Charter of City of Jacksonville.

The question here presented for adjudication is whether or not the amended declaration filed August 19, 1944, states a cause of action. The charter power of the City of Jacksonville to own and operate a swimming pool is not presented but apparently was considered by the parties; neither is any applicable ordinance of the city involved or argued by counsel. The briefs filed do not contend for an application of the charter or ordinance provisions of the city of the facts charging negligence as a basis of the amended declaration.

The case of Turlington v. Tampa Electric Co., 62 Fla. 398, 56 So. 696, 38 L.R.A. (N.S.) 72, Ann. Cas. 1931D 1213, involved the legal sufficiency of counts of a declaration. It was made to appear that the Tampa Electric Company operated a swimming pool at Ballast Point near Tampa. Turlington, for a consideration, obtained a bathing suit and was entitled to the privileges of the bath-house and spring board. He

dived head first off the spring board into the waters of Hillsborough Bay and in so doing struck his head on the bottom of the bay, the depth of the water being only three or three and one-half feet. The dive against the bottom of the bay in the shallow water broke Turlington's neck. There were no signs at or near the spring board indicating the depth of the water. Turlington had no knowledge of its depth—there was no sign warning the public of the danger of diving from said spring board. The lower court held that the two counts of the declaration failed to state a cause of action. This order was reversed and we in part said:

"One who maintains a public resort is required by law to keep it in a reasonably safe condition for those who properly frequent the place. Where the public is invited to attend a resort, it is the duty of the one who so invites to exercise all proper precaution, skill and care commensurate with the circumstances to put and maintain the place and every part of it in a reasonably safe condition for the uses to which it may rightly be devoted. A failure to comply with this duty may be negligence; and for an injury proximately caused by the negligence, the negligent party may be liable in damage, if the party injured is not guilty of contributory negligence. . . .

"Where a party maintains a bath house, or a diving or swimming place for the use of the public for hire, and negligently permits any portion of the same or its appurtenances whether in the house or of the depth of the water or in the condition of the bottom or in things thereon to be in an unsafe condition for its use in the manner in which it is apparently designed to be used, a duty imposed by law is thereby violated; and if an injury to another proximately results from a proper use of the same without contributory negligence, a recovery of compensatory damages may be had. . . ."

The case of McKinney v. Adams, 68 Fla. 208, 66 So. 988, L.R.A. 1915D, 442 Ann. Cas. 1917B, 326, is cited. An examination of the case discloses that it is bottomed largely on Chapter 6189, Acts of 1911, Laws of Florida, and its application is limited to bath houses and other similar places at seaside resorts. The case is not in point and has no bearing on the facts alleged in the case at bar.

In the case of Ide v. City of St. Cloud, 150 Fla. 806, 8 So. 2nd 924, it was alleged that the defendant city maintained a bathing beach outside the city limits; that for some time the city knowingly allowed a deep hole out in the lake to remain hidden and unguarded; the city had invited the general public on the premises and the plaintiff's husband and minor son entered in response to the invitation and were drowned because of the defendant city's negligence. We held that when a municipality accepts the charter power and under color of such power attempts to render a service to the public, it necessarily assumes an obligation to exercise reasonable care for the safety of the public.

In reversing the judgment of the trial court, we, in part, said (text 150 Fla. 808) :

"The authorities are divided, however we think the better view is that where a city, pursuant to charter power, performs a local function for its people it is held to the same degree of care as private persons. Stevens, et ux v. City of Pittsburgh, 129 Pa. Super. 5, 194 Atl. 563. This has been the tendency of this Court. Skinner v. City of Eustis, 147 Fla. 22 2 So. (2nd) 116; McQuillen Municipal Corporations, 2 Ed. The authority to maintain a park carries with it authority to maintain a bathing beach. Thayer, et al., v. City of St. Joseph, 227 Mo. App. 623, 54 S. W. (2nd) 442. Those who maintain the latter are under a duty to exercise due care for the safety of those invited there."

The recent case of Payne v. City of Clearwater, 155 Fla. 9, 19 So. (2nd) 406, involved an allegedly unsafe spring board used by the general public which extended over the waters of the Gulf of Mexico and was owned and operated by said City. The negligence, as alleged, consisted of permitting and allowing the spring board, which was partially covered by canvas, when used by the public for diving, would become wet, slippery, dangerous and unsafe for use as a spring board. We held that the declaration failed to state a cause of action because the plaintiff knew that the spring board was wet or likely would be wet by splashing water due to the use and normal operation of the spring board by others at the time

and place of diving. The slippery condition of the spring board was merely incidental to its use and normal operation.

We do not overlook the fact that high authorities hold that when a municipality supplies public baths in the interest of the public health pursuant to authority granted by statute, or otherwise, liability for negligence in the maintenance or operation thereof does not exist, but the tendency of late decisions and development of the law on this subject is to hold municipalities liable for negligence in the maintenance and operation of parks, play grounds, bathing pools, bathing beaches, and like recreations, when the municipality is performing a local function for its people and the liability therefor usually is on the same basis as a private person or corporation. See McQuillin on Municipal Corporations, (2nd ed.) Revised Vol. 6, 1207-8, par. 2859; also cited cases under Section 2859 in work *supra*; 1943 Cumulative Supplement pages 984-5.

The negligence charges here were: (1) the failure of the defendant to exercise ordinary care to provide an adequate and sufficient number of attendants for the protection of the bathers at defendant's bathing pool; (2) that two attendants for 250 bathers so provided were inadequate and insufficient; (3) that the two attendants so provided failed or neglected to perform their duty; (4) the watch towers about the pool were not used in any manner for the protection of the bathers then in the pool. The negligence of a life guard at a municipal swimming pool in failing to see a boy go and remain under water held a question for the jury. See Thayer v. City of St. Joseph, 227 Mo. App. 623, 54 S. W. (2nd) 442. Ordinary care to provide a reasonably sufficient number of attendants for the protection of bathers at a public bathing resort conducted for private gain is a standard of duty in that respect. See Lyman v. Hall, 117 Neb. 140, 219 N.W. 902. Absence of a life guard at a swimming pool is negligence. See City of Longmont v. Swearingen, 81 Colo. 246, 245 Pac. 1000.

The duty of providing supervision and attendants of swimming pool on the part of an owner and operator is outlined by Shearman and Redfield on Negligence, Vol. 1 (Rev. Ed.) 71-3, par. 28, thusly:

"28. Supervision and Attendants.—Various activities require supervision, either by reason of equipment incidental thereto or by reason of the need of regulating the conduct of the patrons thereof. The duty to supervise, where it exists, commonly requires for its proper discharge the agency of guards or attendants.

"The question of supervision often arises in connection with the operation of swimming pools and bathing resorts. In the ordinary case, due care requires the presence of attendants or guards in number reasonably sufficient for the protection of bathers. Even though a guard be in attendance, his inattention may furnish ground of recovery.

Causal connection must be shown. Failure to provide suitable supervision is otherwise not actionable.

The necessity of an attendant has been suggested in a case where there was a relatively considerable space between an elevated railroad car and the platform. A ferry company has been held liable for a failure properly to supervise removal of a motor bus from its ferry boat. Adequate supervision includes prevention of boisterous conduct on the part of patrons.

Due care in a given case may require supervision, but the supervision required may be merely general as contrasted with special or immediate. This distinction has been drawn in cases involving playground and gymnasium apparatus.

It has been held not necessary to provide attendants on cars of a roller coaster or scenic railway. The same is true, with relation to revolving doors."

The judgment appealed from is hereby reversed.

TERRELL, BUFORD and ADAMS, JJ., concur.

20 So. (2nd) 493               January Term, 1945
January 16, 1945                  Division B