## STANLEY SKINNER v. CITY OF EUSTIS.

2 So. (2nd) 116
En Banc
Opinion Filed May 2, 1941

*G. P. Garrett* and *Donald Walker,* for Plaintiff in Error;

*Duncan, Hamlin & Duncan,* and *C. Harold Hippler,* for Defendant in Error.

THOMAS, J.—The plaintiff in error, who was plaintiff in the court below, filed a declaration against City of Eustis claiming damages for an injury alleged to have resulted from negligence of the defendant in the operation of a "skeet" shooting range.

It is not necessary to elaborate on the alleged cause of action as will be seen as the question presented to us is developed.

The praecipe for summons was issued more than a year after the wrongful act and to the declaration the defendant filed certain pleas, among them one that the "cause of action did not accrue within six months before this suit." It was stipulated by the parties litigant that the plea which we have quoted was true and thereupon the court entered a judgment in favor of the defendant. Thus, there is presented to us for determination the question of the validity of Section 4 of Article XIV of Chapter 6683, Laws of Florida, Special Acts of 1913, providing:

"That suits on all causes of action, of whatever kind or nature, accruing against the Town [now City] of Eustis, shall be instituted within six months after the cause of action accrues."

The part of the Constitution of the State to which it is contended by the plaintiff in error the above special limitation does violence is as follows:

"The Legislature shall not pass special or local laws . . . regulating the practice of courts of justice, except municipal courts; . . ."

The Act establishing the charter of the defendant municipality was a special or local one and the provision with reference to a limitation of the time for bringing suit against the city shortened considerably that provided by general law, therefore, to put it in simpler language, we must determine whether the Legislature in making such provision attempted to regulate the *"practice* of courts of justice."

The word "practice" has been given varied definitions, some of them slightly broader than others, by the courts which have dealt with the subject but in general it means the method of conducting litigation involving rights and corresponding defenses. Obviously, the authors and adopters of the Constitution determined that the procedure in the courts of this State, excepting of course municipal courts, should be uniform. The inhibition is against special as well as local laws.

In State *ex rel.* Buford, Atty. Gen'l., v. Daniel, *et al.,* 87 Fla. 270, 99 So. 804, the Court distinguished between laws local and laws special. It was said that the former related to "particular subdivisions or portions of the State or to particular places of classified localities," and the latter to "particular persons or things or other particular subjects of a class."

The part of the charter of the city under attack relates to a defense which that municipality might present, and in fact was obligated to present under

the ruling of this Court in Town of Mount Dora v. Green, 117 Fla. 385, 158 So. 131, in actions *ex contractu* or *ex delicto* where six months had passed between the date of the alleged injury and the institution of the suit. In this case, however, there was no challenge of the validity of the Act.

From the briefs filed and our own research we have found no case identical with the one at bar, however we have examined decisions of courts of other States interpreting similar constitutional provisions where the same principle was involved.

It is evident that the defense made available to the defendant in error would be presented exactly as one under the general statute of limitations and that the same procedure would be followed in deciding the issue thus presented. It is also apparent that the manner of trying the case would be the same in any court of the state, therefore the first impression is that the legislation did no more than grant to the City of Eustis the right to defend, made obligatory by the decision in Town of Mount Dora v. Green, *supra,* any suit against it on the ground that the injury charged occurred more than six months before bringing suit, and that uniformity of practice in courts of justice did not therefore become involved.

Upon closer study, however, and a careful examination of the cases which we will presently cite it develops that the practice of courts of justice is affected. The Legislature singled out this city and granted to it a defense which, when proven, would bar the enforcement of the plaintiff's right of action whether it arose from the city's activity in a governmental or a proprietary capacity. Thus, the municipality could by the running of a special or local statute of limita-

tion and by the passage of a comparatively short period of time escape liability upon a contract or from a tort executed or committed even in a proprietary capacity while the responsibility of other persons and corporations continues until the general statute of limitations shall have operated.

In Utah where the applicable provision of the constitution is the same as the one in the Constitution of Florida, except that the inhibition is against private or special, instead of local or special, laws, it was held that a provision in a "Liquor Control Act" that one complainant could include charges of several violations was unconstitutional because of its variance with the general law which permitted a charge of but one offense in an information. Lyte v. District Court of Salt Lake County, 61 P. (2nd) 1259.

The District Court of Appeal, Third District, California, held that a law providing for the manner of presenting a defense by insurance companies on policies having a peculiar provision of nonliability where loss was attributable to a peril excepted in the contract of insurance although traceable to a danger insured against, violated a provision of the constitution of that State which is the same as the one which we are construing. Coolidge v. Standard Accident Ins. Co., 300 P. 885.

The Supreme Court of the same State decided that a special form of complaint in actions to collect taxes on railroads situated in more than one county conflicted with this organic prohibition. People v. Central Pac. R. Co., 23 P. 303.

It will be noted that in these three cases the court dealt with an information, a plea and a complaint, respectively, and although we are not concerned here

with a strict matter of pleading it seems that when we consider the principle involved we should be even more inclined to invoke the inhibition.

The conduct of the trial of a case based upon such an information or complaint, or in which a plea of this kind was interposed would be the same as if these pleadings did not have the characteristics which were found objectionable, and yet in all these cases it was the view of the appellate courts that there was such a variance as to make the laws providing for them violative of the constitutional inhibition against the regulation of practice in courts of justice by special law. It seems to us that the infringement in these circumstances is not as serious as the one here because in them the provisions discussed referred to informations for *all* violations of a certain law controlling liquors, pleas of *all* insurance companies where the policies contained a certain stipulation and complaints for the collection of taxes on *all* railroads in more than one county, while the law challenged in the instant case is one providing for a defense for but one city. If such a provision is valid it would be possible for the Legislature to include in every charter granted by special law a different statute of limitations.

It is true that the pleadings of the general statute and the special one would be identical except for the actual period of time stated but in the result the difference would be vast. The enactment of the charters of the municipalities of the State containing various statutes of limitations would necessarily produce total lack of uniformity in the defenses presented by those cities, even in causes of action that were identical, and in view of the effect of proving such statutes it seems to us that inconsistency in the ad-

ministration of justice would be the outcome that was meant to be avoided.

A particular municipal corporation and an individual or private corporation would not be treated alike and two causes of action of the same nature, defended by a municipal corporation on one hand and a private corporation or individual on the other, would be concluded differently despite the fact that the city at the time the cause of action accrued was engaged in an activity in its proprietary capacity.

We have not ignored the organic provision (Sec. 8, Art. VIII) whereby the Legislature is given "power to establish, and to abolish, municipalities, to provide for their government, (and) to prescribe their jurisdiction and powers . . ." Such a special statute of limitations does not relate to jurisdiction, power or government. Under the cases we have cited and in our own interpretation such provision refers to practice in a court of justice when the city becomes a litigant there and would give it advantage over other defendants even though the suit grew out of an activity proprietary, as distinguished from governmental, in character. This construction does not seem to infringe on the scope intended for Section 8 of Article VIII. Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716.

Having concluded that such special statutes of limitations should not be made available to municipalities we think it unnecessary to determine the remaining question appearing in the briefs, namely, the sufficiency of the title of the Act providing a charter for the city to cover the provision for the limitation of the time for bringing suits.

As a consequence, the judgment of the lower court is reversed.

BROWN, C. J., TERRELL, BUFORD, and CHAPMAN, J. J., concur.

WHITFIELD and ADAMS, J. J., dissent.

ADAMS, J. (dissenting).—The pertinent parts of the Constitution for a decision of this case are the following:   Section 20, Article III:

"The Legislature shall not pass special or local laws . . . regulating the practice of courts of justice, except municipal courts. . . ."

Section 21, Article III, provides:

"In all cases enumerated in the preceding section all laws shall be general and of uniform operation throughout the State, but in all cases not enumerated or excepted in that section, the Legislature may pass special or local laws: . . ."

Section 24, Article 3:

"The Legislature shall establish a uniform system of county and municipal government, which shall be applicable, except in cases where local or special laws are provided by the Legislature that may be inconsistent therewith."

Section 8, Article VIII:

"The Legislature shall have power to establish and to abolish, municipalities, to provide for their government, and to prescribe their jurisdiction and powers, and to alter or amend the same at any time.   When any municipality shall be abolished, provision shall be made for the protection of its creditors."

In the opinion of Mr. Justice WHITFIELD in Waybright v. Duval County, 142 Fla. 895, it was said:

"The Constitution of Florida provides that specific

classes of legislative enactments shall be by general laws. Other enactments may be by special or local laws, or by general laws when not otherwise required by the Constitution."

"The validity of the statute in question should be tested by all of the applicable provisions of the Constitution rather than by Section 20, Article III, alone. See State *ex rel.* v. The County Commissioners of Duval County, 23 Fla. 483. This case was an action to compel county commissioners to call an election under the provision of a special statute establishing the City of Jacksonville.

Sections 20 and 21 of Article III were urged to strike down the legislative Act. Justice RANEY speaking for the Court said:

"If this and the preceding sections were all there is to be found in our Constitution upon the subject of special or local laws and municipalities, it would be clear that the purpose and intention of the framers of that instrument were that the proviso to Section 21 would control special legislation incorporating a city or town, or excepting an existing municipality from the general and uniform system of laws governing the class of municipalities to which it might belong."

Quoting further it was said:

"Turning our attention to Section 8 of Article VIII, what do we find it to be? It is an express and unqualified declaration of the power of the Legislature to deal with municipalities 'at any time,' according as and whenever the public good might require the establishment or abolishment, the alteration or amendment, of any municipal government."

Should the test be made without regard to the entire Constitution we could not uphold the creation of a county court by legislative Act. Those Acts are not uniform. In one county a claim for $300.00 must be brought in a county court. In the adjoining county the jurisdiction may be in the circuit court. There is no uniformity there. The Acts are good however by virtue of a special constitutional provision. The same is true here regarding Section 8 of Article VIII, *supra*.

Quoting further from the same opinion:

"Such being the fact, it is plain that the intention of the framers of the Constitution in putting Section 8, of Article VIII, in the Constitution, was to qualify the general effect of Section 21, of Article III, or, in other words, to exempt special legislation as to cities and towns from its effect. The result of any other construction is to render the former section of no effect whatever as a part of the Constitution." . . .

"If the proviso of Section 21, of Article III, applies to cities and towns it must to counties; to make a new county of a part or parts of an existing county or counties is no less logical legislation than to make a city or town of the same. As between counties on the one hand and municipalities on the other, there is to be noticed only the express provisions as to time in Section 8, but also the fact that the declaration of power extends not only to the establishment of municipalities but to providing for their government, prescribing their jurisdiction and powers, and to altering and amending the same, thus indicating a more extensive exception of municipal, than of county legislation, from the trammels of such proviso. A like discrimination is shown by Section 20 of Article

III, which, as appears at the outset of this opinion, absolutely prohibits any special legislation as to several matters of county government, without extending the same prohibition in the case of municipalities. When we consider the part which county officials perform in administering the general laws of the State, this discrimination appears entirely reasonable."

"In construing a constitution the whole of it is to be examined with a view to arriving at the true intention of each part effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the duty of the courts is to harmonize them if possible, and to lean in favor of a construction which will render every word operative rather than one which may make some words idle and nugatory. One part may qualify another so as to restrict its operation or apply it otherwise than the natural construction would require if it stood by itself; but one part is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together. Cooley C. L., 70, 71. The view we take is the only one which gives any effect or operation to Section 8. This view makes it qualify the operation of proviso to Section 21, whereas any other construction would make Section 8 entirely nugatory."

"Legislation as to municipalities may be enacted at any time. 'It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding if it may be any construction which implies that the Legislature was ignorant of the meaning of the language it employed.' Montclair v.

Ramsdell, 107 U. S. 152. The same is true of Constitutions and Conventions which frame them."

In City of St. Petersburg v. English, *et al.,* 54 Fla. 598, it was said referring to corporate charter of municipal corporations:

"The charter, as it is called, consists of the creative Act and all laws in force relating to the corporation, whether in defining its powers or regulating their mode of exercise."

In City of Jacksonville v. Bowden, 67 Fla. 181, it was said:

"Uniformity is not required in the character and number or in the powers and duties of municipal officers." See also Middleton v. St. Augustine, 42 Fla. 287, the majority opinion is predicated upon the theory that: "A particular municipal corporation and an individual or private corporation would not be treated alike. . . ."

This position is not in harmony with the prior decisions of this Court.

In Williams v. City of Jacksonville, 118 Fla. 671, this Court in quoting from Crumbley v. City of Jacksonville (102 Fla. 421, 138 So. 488), said:

"Furthermore, the Legislature might reasonably deem it wise and necessary to throw certain safeguards around municipal corporations to protect them against unfounded or fraudulent claims, which safeguards might not be deemed necessary in order to afford protection to private corporations even when engaged in some one or more of similar activities. It might have been in the legislative mind that private corporations or individuals engaged in business for profit may be depended upon to take care of their own interests and make prompt and efficient investigation of all claims

made or likely to be made against them. On the other hand, cities, with miles of streets and electric lines, etc., cannot keep them under watch all the time, and, unless promptly notified of injuries received, or alleged to have been received, cities might frequently find themselves unable to ascertain the actual facts of *bona fide* claims, and seriously handicapped in defending against fraudulent claims. There are so many differences between public corporations on the one hand and private corporations and individuals on the other, and there being an express grant of broad powers to the Legislature in Section 8 of Article VIII of the Constitution with reference to municipal corporations, that we cannot see our way clear to hold that the Legislature was making an arbitrary and unreasonable classification when it provided that, as a condition precedent to suit, a party must give a reasonable notice to the city of the nature and character of his claim and the circumstances under which it arose, so that the public funds of the city might be protected by ample opportunity for its officials to make invesitgation of the facts while there was yet opportunity to make that investigation efficiently and effectively."

Chapter 6683, Special Acts of 1913 is entitled: "An Act to abolish the Present Municipal Government of the Town of Eustis, Lake County, Florida, and to Organize a Town Government for the Same and to Provide Its Jurisdiction and Powers; and to Erect the Same into an Independent Road District of Lake County." It is not "an Act regulating the practice in courts of justice," and contains no provisions on such latter legislative subject.

The provision of Section 4, Article XIV, of Chapter

6683, "that suits on all causes of action, of whatever kind or nature, accruing against the Town of Eustis shall be instituted within six months after the cause of action accrues," is a part of and matter properly connected with the subject expressed in the title of the Act and is properly included in the Act. The authority, rights and duties of a municipality are conferred by statutes enacted to establish and to abolish a municipality, to provide for its government and to prescribe its jurisdiction and powers, under Section 8, Article VIII, of the State Constitution. Section 24, Article III, requires the Legislature to establish a uniform system of county and municipal government, which shall be applicable except in cases where local or special laws are provided by the Legislature that may be inconsistent therewith." The amendment to Section 24 of Article III, adopted at the polls in November, 1934, does not become effective until the Legislature classifies the cities and towns of the State as required by the amendment of 1934. Section 20, Article III, of the Constitution relates to matters not municipal in their nature and such section does not control enactments under Section 8, Article VIII. See amendment to Section 21, Article III, adopted in 1938.

WHITFIELD, J., concurs.