106 So.2d 860 (1958)
Quiller D. RAGANS, Appellant,
v.
CITY OF JACKSONVILLE, a municipal corporation, Appellee.
No. A-430.
District Court of Appeal of Florida. First District.
November 25, 1958.
*861 Martin J. Pearl and Dennis R. Dingle, Jacksonville, for appellant.
William M. Madison and Inman P. Crutchfield, Jacksonville, for appellee.
WIGGINTON, Judge.
Plaintiff has appealed from an order of the trial court granting defendant-appellee's motion to dismiss and dismissing plaintiff's amended complaint with prejudice. Defendant's motion was grounded upon absence of an affirmative allegation that notice of plaintiff's damages was given to defendant within the time required by law.
In substance, the allegations of the amended complaint are: that at a stated time and place within the City of Jacksonville plaintiff was arrested and taken into custody by a police officer employed by the said City, and who was acting within the scope of his employment; that the police officer thereupon without just provocation, wilfully, wrongfully and maliciously assaulted and beat plaintiff; and that by reason thereof plaintiff was seriously injured and experienced severe pain and suffering which required the expenditure of funds for medical treatment. Based on these allegations, plaintiff prayed for damages, both punitive and exemplary, for his injuries resulting from the unlawful act of defendant through its servant. There was no allegation that notice of plaintiff's damages was given the defendant city at any time, and, admittedly, such notice was not in fact given.
The portion of the Charter of the City of Jacksonville that forms the hub of this action provides as follows:
"No suit shall be maintained against the City for damages arising out of its failure to keep in proper condition any sidewalk, pavement, viaduct, bridge, street, waterworks, electrict light plant, municipal docks and terminals, or other public place; neither shall any suit be maintained against the City arising out of any other tortious action or action sounding in tort, unless it shall be made to appear that damage alleged was attributable to the gross negligence of the City, and that written notice of such damage was, within thirty days after the receiving of the injury, given to the City Attorney with such reasonable specifications as to time and place and witnesses as would enable the city officials to investigate the matter; and no verdict shall in any suit be given for any amount exceeding compensation damages to the plaintiff directly attributable to such negligence on the part of the City and not caused by contributory negligence on the part of the plaintiff.
"It shall be the duty of the City Attorney, upon receiving any such notice, *862 to at once investigate the matter and lay the facts supported by the evidence before the City Commission in a written report, and the City Commission shall have the right, and, upon the written request of the person injured, it shall be the duty of the City Commission to investigate the matter and it may, by resolution, make such reasonable settlement of any such damages as may be agreed upon between the City Commission and the City Attorney. All other claims against the city shall be settled in the same manner."[1]
It is this provision we are called upon to construe.
The first point attacks the validity of that portion of the Charter provision purporting to restrict tort suits against the city solely to those cases in which the alleged damages are attributable to gross negligence. It is contended that such restriction contravenes Section 4 of the Declaration of Rights of the Florida Constitution, F.S.A.[2] By any reasonable interpretation, it is clear that the challenged Act would, if valid, preclude suits against the city to recover damages flowing from an intentional tort, such as the wilful assault and battery committed by an employee of the city while acting within the scope of his employment under the circumstances alleged in the complaint here reviewed. In support of his attack upon this provision appellant relies on the recent decision of our Supreme Court in Hargrove v. Town of Cocoa Beach.[3] There, in the Court's well reasoned and courageous opinion written by Mr. Justice Thornal, the historical distinction between municipal functions performed in a proprietary, as distinguished from a governmental capacity was conceded; and the application of the doctrine of sovereign immunity to acts committed in the performance of governmental functions was ably discussed. It was pointed out that since 1850 the law of this jurisdiction had imposed liability upon municipalities for damages resulting from the negligent performance of proprietary functions; but had recognized, in eroding form, the sovereign immunity from liability for governmental functions. Alluding to the numerous incongruities arising from the application of this distinction, the Court, in the Hargrove case, pointed out that:
"Under the rule we have followed, if a police officer assaults and injures a prisoner, the municipality is immune (authorities cited) but if the police officer is working the prisoner on the public streets and negligently permits his injury, the municipality can be held liable * * * (authorities cited)."
In striking down this outmoded theory of sovereign immunity, the Court specifically held that a municipality is liable for the torts of its police officers under the doctrine of respondeat superior. Clearly, then, under the rationale of the Hargrove case, municipal tort liability cannot be validly restricted solely to suits for damages arising out of gross negligence. It therefore necessarily follows that the challenged provision of the Charter Act is void and must yield.
The second point questions the necessity of giving the city written notice within thirty days of the injury complained of, as a prerequisite to maintain a suit for damages. Appellant urges that this requirement relates only to actions seeking recovery for damages incurred as a result of gross negligence, and therefore, has no application to suits arising out of intentional *863 torts; or, in the alternative, that this requirement, if applicable, is dependent upon, and, must therefore fall with the attempted limitation of such suits to recover for gross negligence alone. With this we cannot agree.
It is evident from the above quoted Charter provision that it purports to impose a two-fold limitation upon the institution of any tort action against the city, to-wit: (1) the damage alleged must be attributable to gross negligence; and (2) written notice thereof must be given to the City Attorney within thirty days following the injury. Our holding as to the former limitation does not necessarily invalidate the latter. If it is within the proper scope of legislative authority to require such notice as a prerequisite to suit, the latter provision is valid and, therefore, constitutes an effective bar to the instant cause.
Notice provisions such as the one here treated have been subjected to consideration by our Supreme Court in a long line of cases.[4] In an early decision it was stated, by way of obiter dictum, that the predecessor of the instant notice provision "* * * conflicts or comes dangerously near conflicting with that provision of section 20, art. 3, of our Constitution, which prohibits the passage of any special or local law regulating the practice in courts of justice, except municipal courts."[5] It is noted that the Court was not then faced with the necessity of determining the question to which it alluded. Later cases, notably Olivier v. City of St. Petersburg,[6] leave no doubt as to the validity of these provisions. While there was a strong dissent in the Olivier case  predicated largely upon the rationale of an earlier decision[7] in which the Court held invalid a charter provision establishing a six months statute of limitations on actions against that particular city, as violative of Section 20, Article III, Florida Constitution  the majority held a provision similar to the one here questioned to be valid. It was reasoned that:
"The purpose of Acts of the kind here considered is to notify the city that a person has been injured so that the city will have a reasonable opportunity to investigate the matter, determine the question of liability and effectuate a settlement, if one is justified. Primarily, its purpose is to avoid litigation and the incident expense thereof. We see no relation between such an act and one regulating the practice of courts." [65 So.2d 75.]
Thus, it is readily apparent that our Supreme Court has faced this question squarely and has repeatedly held in favor of the validity of the notice requirement. While our sympathies rest with the view expressed by the dissent to which reference has been made, we are reluctant to assume the burden incident to a holding contrary to so formidable an array of authority as has been delineated herein. We are, therefore, compelled to the conclusion that the Charter Act here in question, although now inoperative in certain aspects heretofore mentioned, is applicable to all suits for damages arising out of any tortious act, including that alleged by the amended complaint in the cause now on appeal. And, the challenged notice provision is a valid one that must be complied with as a prerequisite to any tort action against the appellee city. Failure of the complaint to allege such compliance renders it fatally defective *864 and the proper subject of a motion to dismiss.[8] This defect being incapable of cure by amendment in the instant case, it follows that the action of the trial court, granting appellee's motion with prejudice, was correct.
For the foregoing reasons the order appealed from must be and the same is hereby affirmed.
STURGIS, C.J. and CARROLL, DONALD, J., concur.
NOTES
[1] Ch. 8279, Laws of Florida 1919, as amended by Ch. 11564, Laws of Florida 1925, Ex.Sess.
[2] "§ 4. * * * All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay."
[3] Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 133.
[4] Eg.: Tillman v. City of Pompano Beach, Fla. 1957, 100 So.2d 53; Buck v. City of Hallandale, Fla. 1955, 85 So.2d 825; Olivier v. City of St. Petersburg, Fla. 1953, 65 So.2d 71; Town of Miami Springs v. Lasseter, Fla. 1952, 60 So.2d 774; Crumbley v. City of Jacksonville, 102 Fla. 408, 135 So. 885, 887, 138 So. 486; Stallings v. City of Tampa, 78 Fla. 606, 83 So. 625; High v. City of Jacksonville, 51 Fla. 207, 40 So. 1032.
[5] Crumbley v. City of Jacksonville, supra, note 4.
[6] Supra Note 4.
[7] Skinner v. City of Eustis, 147 Fla. 22, 2 So.2d 116, 135 A.L.R. 359.
[8] Crumbley v. City of Jacksonville, supra note 4; Stallings v. City of Tampa, supra note 4; High v. City of Jacksonville, supra note 4.