JESSIE SALEVAN, Plaintiff, v. WILMINGTON PARK, INC., a corporation of the State of Delaware, Defendant.

(*March* 21, 1950.)

WOLCOTT, J., sitting.

.*Percy Warren Green* for the plaintiff.

*William H. Foulk* for the defendant.

Superior Court for New Castle County, No. 382, Civil Action, 1949.

WOLCOTT, Judge.

The plaintiff brings suit for personal injuries received when struck in the back by a baseball while walking on East Thirtieth Street in the City of Wilmington, past the ball park of the defendant.

The defendant is the owner of land at the southwest corner of the intersection of Thirtieth Street and Governor Printz Boulevard in the City of Wilmington on which is located the ball park in question. The business of the defendant is the maintenance and renting of the ball park and its facilities, and has been carried on by the defendant for over eight years.

The defendant leases the facilities of its park to ball clubs and, in particular, leases the facilities as its home field to the Wilmington Blue Rocks, a member team of the Inter-State League. When the Wilmington Blue Rocks are not playing at their home field, the defendant leases the facilities of the park for other athletic exhibitions and, on the night when the injury took place, the park was leased for a game being played between two Negro professional teams from Philadelphia.

The park of the defendant is laid out so that the left field foul line runs parallel to Thirtieth Street approximately 160 feet from that street. Parallel to the left field foul line and to Thirtieth Street is a fence which is 40 feet from the sidewalk running along the southerly side of Thirtieth Street. The grandstand behind the home plate and extending along the foul line between home plate and third base is 40 feet in height with a wire screen erected on its top 10 feet in height. At the easterly end of the grandstand are 20-foot high bleacher stands running parallel to the left field foul line and along the left field fence. Commencing at the end of the bleachers, the fence running parallel to Thirtieth Street is 10 feet in height. The distance from home plate to the beginning of the 10-foot fence is approximately 150 feet.

On the night in question, the plaintiff was walking on the sidewalk on the southerly side of Thirtieth Street in an easterly direction with her daughter-in-law and grandson, aged 10 years. When she reached a point on the sidewalk roughly opposite the point where the bleachers end and the 10-foot fence begins, she was struck in the back by a baseball. The plaintiff testified that she did not see the ball before it struck her. The plaintiff's daughter-in-law, who was walking with the plaintiff holding her right arm, testified that she did not see the ball prior to the time it struck the plaintiff but that, immediately after the plaintiff was struck, she heard the announcer over the loud speaker system within the park announce, "Foul ball." The plaintiff's grandson testified that he was walking on the right of the plaintiff's daughter-in-law and saw the ball which struck the plaintiff come over the bleachers out of the ball park. The defendant did not seriously contest this testimony, and I am satisfied that the plaintiff was struck by a fast-moving baseball which came over the fence out of the ball park.

The plaintiff called as witnesses a radio sports announcer, a

newspaper sports reporter and a young boy who had many times waited on Thirtieth Street for baseballs to come over the fence of the defendant's park. From the testimony of these witnesses, which is not substantially contradicted by the defendant, it appears that in the course of an average ball game, 16 to 18 foul balls come from inside the park into Thirtieth Street and, of them, an average of 2 or 3 foul balls come from within the park over the 10-foot fence and into the area along Thirtieth Street through which the plaintiff was passing at the time of the injury. The manager of the defendant testified that, on an average, 68 baseball games were played at Wilmington Park during the baseball season.

The plaintiff does not contend that the defendant is an insurer of persons lawfully using the highways and sidewalks adjacent to its ball park, but does contend that the defendant, as a landowner, has the duty to exercise reasonable care in the use of its land so as to prevent injury to travelers lawfully using the highways adjacent thereto. The plaintiff contends that the defendant had notice of the passage of baseballs outside of its park into East Thirtieth Street to the danger of persons using that public street, and that the failure of the defendant to take reasonable precautions to safeguard the public was negligence.

The defendant, on the other hand, contends that the plaintiff has wholly failed to establish any negligence; that the defendant had no notice of baseballs passing over the fence in question, and that the defendant had taken whatever precautions were necessary under the circumstances for the protection of the public.

It is clear that the public has a right to the free and unmolested use of the public highways, and that abutting landowners may not so use their land as to interfere with the rights of persons lawfully using the highways. *Mills* v. *Wilmington City Railway Co.*, 1 *Marv.* 269, 40 *A.* 1114; *Philadelphia & R. Railway Co.* v. *Dillon*, 1 *W. W. Harr.* 247, 114 *A.* 62, 15 *A. L. R.* 894.

Considering the extent to which the game of baseball is played in this country, the reported decisions of injuries caused by baseballs which have been hit out of baseball parks and which strike passers-by on the highways are surprisingly few. Seven cases have been called to my attention and no others have come to view in which liability was sought to be imposed on the landowner. It is necessary to review them briefly.

*Louisville Baseball Club v. Hill*, 291 Ky. 333, 164 S. W. 2d. 398, was a suit for an injury to an eleven year old boy struck in the face by a baseball coming over the fence from the defendant's park. The jury below returned a verdict for the plaintiff and, on appeal, this verdict was affirmed, although in the course of its opinion, the court stated that the doctrine of *res ipsa loquitur* was applicable and that a verdict for the plaintiff should have been directed. The court said that the defendant owner of the baseball park had notice that baseballs were often knocked over the particular fence in question and by reason of that knowledge, was bound to anticipate that users of the highways might be injured. This being so, the court stated it was the duty of the defendant park owner to prevent the possibility of such accidents.

*Jones v. Kane & Roach, Inc.*, 182 Misc. 37, 43 N. Y. S. 2d 140, was an action against the City of Syracuse for personal injuries to a pedestrian on a sidewalk running near the ball field on a city-owned park, who was struck in the face by a pitched baseball. There were no barriers of any kind erected around the ball field. The court found that the baseball diamond on the city-owned park was a well defined one; that the city had constructive notice that baseball games had been played thereon, and that baseballs often came from the diamond into the highway. On this showing, the case was submitted to the jury and a verdict was returned for the plaintiff.

*Wills v. Wisconsin-Minnesota Light & Power Co.*, 187 Wis.

626, 205 *N. W.* 556, was an action for personal injuries to a twelve year old girl who was struck in the face by a foul ball coming from a baseball diamond located in an amusement park maintained by the defendant. The defendant maintained the amusement park to increase patronage of its trolley line and the plaintiff and her mother went to the amusement park for the purpose of pleasure. While there, the plaintiff was struck by the baseball. There was no protection of any kind around the park to contain balls within it. It was held that a question of fact was presented for the decision of the jury as to whether or not the defendant had taken reasonable precautions for the safety of the patrons of the amusement park, the court holding that, under the circumstances, the defendant could reasonably have foreseen that persons might be struck by baseballs coming from the baseball diamond.

*Honaman* v. *City of Philadelphia,* 322 *Pa.* 535, 185 *A.* 750, was an action for personal injuries by a plaintiff who was struck in the face by a foul ball. The facts were that a baseball game was being played on a diamond laid out on a public park around which were no backstops or barriers, and so laid out that the catcher stood 8 to 10 feet from the sidewalk running near the diamond. Under these circumstances, the case was submitted to the jury by the trial court and a verdict returned for the plaintiff. On review by the Supreme Court of Pennsylvania, it was held that the city, in maintaining the park, was doing so in its corporate or proprietary capacity and was accordingly liable as other property owners in tort, and the judgment for the plaintiff was affirmed. The court held that landowners who maintain baseball diamonds on their land have a duty to protect persons lawfully using the highways by the erection of appropriate barriers.

*Young* v. *New York, N. H. & H. R. R.,* 136 *App. Div.* 730, 121 *N. Y. S.* 517, was an action for personal injuries by a plaintiff who was struck by a baseball coming from a game being played

on an informal baseball field located on a vacant lot owned by the defendant adjacent to its station. The facts were that it was customary in the particular town for boys and men to engage in the game of "knocking up fly balls", and that the lot in question was surrounded by public streets. On this showing alone, the court dismissed the action holding that ballplaying is not a nuisance *per se* and that there was no evidence to establish that the type of ballplaying going on on the defendant's land was attended with such degree of danger as made it likely that it would injure persons lawfully using the streets. From this dismissal, an appeal was taken. The Appellate Court affirmed the dismissal but recognized that under a proper showing of the inherent danger to persons on the highways, a duty would be imposed to take proper precautions for the protection of those persons.

In *Harrington* v. *Border City Mfg. Co.*, 240 *Mass.* 170, 132 *N. E.* 721, 18 *A. L. R.* 610, an action was brought by an employee of the defendant for injuries received when struck by a baseball coming from a game played by other employees during the lunch hour on a lot owned by the defendant. The evidence showed that the plaintiff was struck by the baseball while standing in a public street; that she had seen such games played daily during the warm months; that she had seen the ball come out into the street several times prior to the occasion when she was injured; and that the game was played about 20 to 30 feet from the street in question. On this showing, a verdict was directed for the defendant.

However, the court recognized the rule that a landowner may not permit acts to be done on his land which would negligently cause injury to a person lawfully on the highways. In the particular case, however, the court held that there was nothing dangerous in the permission granted by the defendant to its employees to play baseball on its large vacant field, and that the plaintiff had not borne the burden of proving notice to the defendant that baseballs often

came from the field where the game was being played into the highways thus creating the danger of injury to persons lawfully using the highways. Since the court held that the defendant could not have foreseen the possibility of persons in the highways being struck by baseballs, it followed that there was no proof of the violation of any duty by the defendant. The verdict was directed, therefore, solely because the plaintiff had failed to carry the burden of proving negligence on the part of the defendant which resulted in the injuries complained of.

*Dwyer* v. *Edison Electric Illuminating Co.,* 273 *Mass.* 234, 173 *N. E.* 594, was an action for personal injuries resulting from being struck by a baseball which came from the premises of the defendant lying along a public street. The defendant's land had a baseball field located on it surrounded by an 8-foot high fence erected on a 3-foot concrete base. The baseball diamond was used by defendant's employees after working hours. At the time the plaintiff sustained her injuries, two teams made up of defendant's employees were playing. The home plate of the diamond was approximately 200 feet from the public highway and it was the fact that the baseball which struck the plaintiff crossed the fence surrounding the baseball diamond at a height of less than one foot above the fence. The court below directed a verdict for the defendant on the ground that the fence maintained would ordinarily have been sufficient to prevent a baseball from passing into the highway. On appeal, the directed verdict was affirmed.

The court, however, specifically stated that there was no evidence whatsoever to show that prior to the occurrence of the injury to the plaintiff, a baseball had ever gone over the fence into the highway and that the plaintiff had failed to sustain the burden of showing that the defendant was negligent in not having anticipated that a baseball would go over the fence into the highway. Had there been such evidence, presumably a verdict for the de-

fendant would not have been directed and the case would have been submitted to the jury to determine whether or not the de-fendant had taken reasonable precautions.

The foregoing referred to authorities are all that have been found dealing with injuries sustained by persons on the highways when struck by a baseball. No difference in principle, however, can exist between injuries from baseballs and injuries from golf balls.

In *Gleason* v. *Hillcrest Golf Course, Inc.,* 148 *Misc.* 246, 263 *N. Y. S.* 886, an action was brought for personal injuries resulting from being struck by a golf ball while the plaintiff was lawfully driving her car on a public highway along which ran one of the fair-ways of a golf course. The ball which injured the plaintiff came into the highway because it was sliced—that is to say, it was driv-en to the right in a curving manner by a player on the golf course. The plaintiff sued both the player who drove the ball and the land-owner. The court held both the player and the landowner liable. The landowner was held liable for the maintenance of a golf course in such condition that missiles might be set in motion into the highway and for the failure to use reasonable care to prevent in-jury to persons lawfully upon the highway. The court recognized that golf, like baseball, is not a nuisance *per se,* but may become such if the game is played in a location or in such a manner as to become dangerous to persons using the highways.

The foregoing cases, when analyzed, are not bas-ically inconsistent. A rule emerges from a careful consideration of them which is harmonious with the result reached in each. This rule is that the playing of baseball with the permission of the landowner on land adjacent to a highway does not of itself cre-ate a public nuisance which would make the landowner an insurer of the safety of persons lawfully using the highway. The inherent nature of the game of baseball, however, is such as to require the

landowner to take reasonable precautions for the protection of the traveling public. What precautions are reasonable must depend upon the facts and circumstances of the particular case. Only those precautions are required which the inherent nature of the game and its past history in the particular location make necessary for the protection of a person lawfully using the highways. The burden is on the plaintiff to show the necessity for precautions to have been taken by the landowner for the protection of the public. The failure of the plaintiff to bear that burden will result in non-suit or a directed verdict for the defendant.

The defendant argues that it took every reasonable precaution for the protection of the public using the highways. The architect who designed its ball park testified that the fence lines were established in accordance with the advice of baseball experts who, on a ground plan, had laid out circles showing the general location where baseballs could be expected to land. He also testified that consideration was given at that time to the height of the barriers to be erected—that is to say, the height of the grandstand, the bleachers and the fence around the park, and that those heights were established on the advice of experts.

While the defendant has shown that consideration was given by it to the protection of the public at the time the park was first built, the fact remains that despite the precautions taken, baseballs went out of its park into the public highway and that the defendant either knew that baseballs went out of its park or, under the circumstances, should have known. The evidence is not seriously contradicted that baseballs went out of the park into Thirtieth Street within the area through which the plaintiff was passing at the time of her injury two or three times in each game played in the defendant's park.

Under the circumstances, it seems clear to me that while the defendant took precautions to protect people passing

along Thirtieth Street, those precautions were insufficient. It further seems clear that the defendant knew, or should have known, that the precautions taken initially were insufficient to protect the public engaged in its lawful right, that is, using the highways. This circumstance puts the case at bar squarely within the rule I have drawn from the reported decisions, and if this were a jury trial, would be sufficient to submit the case to the jury and would compel, in my opinion, the jury to return a verdict for the plaintiff. Accordingly, my conclusion is that judgment should be entered for the plaintiff.

Judgment being entered for the plaintiff, it remains to determine in what amount that judgment should be. Under the circumstances, I believe the sum of $2500.00 will adequately compensate the plaintiff for the injuries received as a result of the negligence of the defendant.