Chupek, Admr., Appellant, *v.* City of Akron, Appellee.

(No. 4166—Decided February 21, 1951.)

*Mr. James A. Dean* and *Mr. T. W. Kimber,* for appellant.

*Mr. Roy E. Browne,* director of law, *Mr. Nathan Koplin,* and *Mr. Hollis P. Allan,* for appellee.

Doyle, J.  The city of Akron is the owner of a stadium with its enclosure, and it is used at times for athletic events, midget automobile racing, and other kinds of public entertainment.  It is known as the "Rubber Bowl."

In the year 1946, the stadium was leased by the city to one Don Zeiter for midget automobile racing purposes.  The lease in part provided for a minimum

cash rental for each event, or a percentage of the receipts from patrons, "after deduction of federal and state taxes, whichever sum is the greater." It further provided "that the sound and lighting systems * * * that may be used by the lessee shall be operated by the city, and all expense of such operation shall be the expense of the city. Public address announcer to be supplied and paid for by lessee." Provision was also made for the lessee to employ sufficient persons to care for the tickets, parking, and police protection, and, if, in the opinion of the city, there was an insufficient number for an adequate staff, that the lessee would immediately provide extra assistants. The lessee also agreed that he would "make the necessary improvements for the track used in midget auto racing and that he * * * (would) maintain the same, and that he * * * (would) cause guard-rails to be placed as requested by the city of Akron at his expense, and that all guard-rails and other spectator protection items * * * (would) be properly maintained and reinforced at all times for the public safety and welfare."

Under this lease, on the 24th of May, 1947, the lessee went into possession of the premises and conducted midget auto races before many thousands of spectators, who paid an admission fee. Among the spectators who paid an admission fee was George V. Chupck, who was killed while watching a race as a result of the disengagement of a wheel from its axle of a racing car and the propulsion of the wheel over the guard fence and into the seating area of the structure, where it struck the deceased and broke his neck.

Suit was brought by the administrator of the deceased against the city under the provisions of the wrongful death statute. In the petition, it was alleged that the city "owned, operated, supervised, and controlled a public park within the city limits of Akron

* * *''; "that on different occasions, and for different forms of entertainment to which the public generally would be invited to attend by the city, either with or without a definite fee charge, the city of Akron, through its duly authorized agents and servants, did furnish, supervise, direct, and advertise the form and character of the entertainment, as well as the seating and accommodations of its spectators." The petition further averred that on May 24, 1947, "the city of Akron gave, or permitted to be given, a public exhibition of automobile contest races within said Rubber Bowl for an admission charge, and in which admission charge the city of Akron participated, and that at said time and place several midget automobile race cars, with operators thereof, participated * * *." Continuing, the petition charged: "that * * * the city of Akron, by and through its duly authorized agents and servants for such racing event, * * * wholly failed and neglected to provide, maintain and construct any barrier, guard rail, fence, screen, or other device for the protection of the spectators, and at said time and place it approved, permitted and encouraged said different racing contests and permitted and approved said racing cars to be operated at a high, dangerous and negligent rate of speed * * * and with a full knowledge that said racing contests, under the conditions then and there existing * * *, were highly dangerous and hazardous to the spectators, including the decedent, George V. Chupek, and plaintiff further avers that said conduct and its participation in said racing event * * * by the city of Akron, was wrongful and negligent and constituted a nuisance, and that such conduct on its part directly and proximately resulted in producing the death of plaintiff's decedent."

Issues were joined by the answer of the city, and, upon trial, at the conclusion of the evidence of the

plaintiff, on motion of the city, the court rendered judgment for the said defendant. Following the overruling of a motion for a new trial, appeal was perfected to this court on questions of law.

1. It is law of long standing that municipal corporations have a double function; first, a governmental function as the arm or agent of the state, and, second, the private, proprietary function. There is substantial unanimity upon the proposition that an incorporated city, when exercising its private or corporate powers, is liable to respond in damages for the negligence of its officers, agents and employees. On the other hand, negligence in performance is not imputable to a municipal corporation entrusted with public or governmental duties. 6 McQuillin on Municipal Corporations (Rev. 2 Ed.), Section 2792.

In this state, municipal corporations may be held liable for the maintenance of nuisances when they are performing governmental duties (Section 3714, General Code), as well as being held liable to respond in damages for negligence when exercising their proprietary powers. 28 Ohio Jurisprudence, Municipal Corporations, Section 601, and cases therein cited.

2. The "Rubber Bowl," owned and controlled by the city of Akron, is devoted to no governmental purpose and is not employed in carrying on or maintaining any governmental function. The city acts only in a proprietary capacity in respect to ownership, control and operation. *State, ex rel. White*, v. *City of Cleveland*, 125 Ohio St., 230, 181 N. E., 24, 86 A. L. R., 1172.

3. "1. A municipality, in so far as it acts in a proprietary capacity, possesses the same rights and powers and is subject to the same restrictions and regulations as other like proprietors." *State, ex rel. White*, v. *City of Cleveland, supra.*

And a municipal corporation which, while performing a proprietary function within its corporate powers, leases its property to an individual for a consideration, creates the legal relation of landlord and tenant, and the city is possessed of the right, immunities and liabilities of a landlord.

This is because when a city embarks upon business enterprises for its own profit, it places its name and its sovereign position on the same plane as that of any private corporation or individual in a similar transaction.

4. The judicial opinion in this state since (and perhaps before) the case of *Burdick* v. *Cheadle*, 26 Ohio St., 393 (1875), has been that liability in tort for injury or damage to an invitee of a lessee whose possession of the premises is complete, does not attach to a lessor when a defect in the premises comes into existence during the continuance of the lease, or when a dangerous condition arises due solely to the use to which the leased premises are put by a lessee.

"Liability in tort is an incident to occupation or control * * *. By preponderant opinion, occupation and control are not reserved through an agreement that the landlord will repair * * *. The tenant and no one else may keep visitors away till the danger is abated, or adapt the warning to the need. * * * 'The power of control necessary to raise the duty * * * implies something more than the right or liability to repair the premises. It implies the power and the right to admit people to the premises and to exclude people from them' * * *." *Cullings* v. *Goetz*, 256 N. Y., 287, at p. 290, 176 N. E., 397.

See *Berkowitz* v. *Winston,* 128 Ohio St., 611, 193 N. E., 343, in which the opinion of Cardozo, C. J., in the New York case was cited with approval by Matthias, J.

In passing upon the claims of the appellant in the light of the record before us, we are of the opinion that the evidence does not show "a joint participation and duty upon each of the two parties for conducting race events at the Rubber Bowl." A stipulated rental for leased premises, based upon a percentage of receipts from invitees of the lessee, does not indicate that the lessor and lessee are acting in concert or concurrently in the production of an event which might create primary accountability of each for injury to a patron. Nor does the reservation by the lessor of a right to operate the "sound and lighting systems * * * that may be used by the lessee" constitute such a reservation of control of the premises by the lessor as to require it to respond in damages when it appears, as it does here, that the property reserved or its operation was in no way connected with the damage sustained. If, perchance, through the negligence of an agent of the city in its operation of the lighting and sound systems, a patron had been injured as a proximate result thereof, the city could be held in damages, but such is not the case before us.

As we view the record, the city of Akron had divested from itself the possession and control of the parts of the stadium and the enclosed field upon which the automobile races were conducted, to which the claims of negligent maintenance and operation, and nuisance, are directed; and that it was only because of the circumstances and conditions existing at the time, which were under the sole control and operation of the lessee, that the fatal accident occurred.

This state is committed to the rule of *Burdick* v. *Cheadle, supra,* that a landlord out of possession owes no legal duty in failing to make premises safe and secure as a place of resort for customers of a tenant, even when knowing that the premises were intended

to be used for specific purposes which might cause injury to the tenant's patrons. As stated therein: "There is no implied engagement or promise, on the part of a lessor, that the leased premises are in a safe condition, or that they are fit for the use to which the lessee intends to put them. If they be unsafe or unfit, it is the duty of the tenant to make them safe, or to fit them for the intended use; and the landlord may reasonably expect that the tenant will do so."

It is observed that, in *Burdick* v. *Cheadle,* above cited, the landlord himself agreed to put the rented premises "in a secure, safe, convenient and proper" condition, and to keep the premises "in good order," and the court held (pp. 397-398) that "if the lessor engages with the lessee, to keep the premises in repair, a breach of the engagement gives a right of action only to the lessee. * * * for if they (the customers) had not entered the premises at the request of the tenant, or under his license, they would not have suffered injury."

It will be remembered, in contrast to the facts in *Burdick* v. *Cheadle,* that in this case the *tenant* agreed with the city of Akron that he (the tenant) would provide the necessary safeguards and would properly maintain "spectator protective items" for the "public safety and welfare." There was no agreement made by the city that it would erect or maintain safeguards.

It is our conclusion that, in respect to the assertion that the city is chargeable with negligence which proximately resulted in plaintiff's decedent's death, such assertion cannot be sustained. The city acted solely in a proprietary capacity; no joint participation in the staging of the exhibition is shown to exist; the relation of landlord and tenant was created, and the city as landlord is entitled to such immunities as the law in this state gives to that legal status.

5. The appellant, in addition to claiming the liability of the city for negligence, urges that the city cannot, "under the facts in this cause escape responsibility by any * * * leasing of its public park * * * to Zeiter, by reason of Section 3714, General Code."

This code provision is:

"Municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, *public grounds,* bridges, aqueducts, and viaducts, within the corporation, and shall cause them to be kept open, in repair, and free from nuisance." (Italics ours.)

The statute, in derogation of the common law, imposes liability upon a municipal corporation for tort while exercising a governmental function. It was not intended to apply to a municipality for tortious conduct while acting in a proprietary capacity. A municipality, under such circumstances, is held to the same liability for tort as an individual, whether it be for negligence or nuisance, regardless of said statute. The statute was not intended to and does not apply to a situation in which a nuisance was created by a tenant of a municipal corporation out of possession and control. If this construction were given, a greater liability would attach to a municipality than that imposed upon an individual or private corporation. See: *Boone* v. *City of Akron,* 69 Ohio App., 95, 43 N. E. (2d), 315.

We conclude, therefore, that Section 3714, General Code, does not create a liability of the city under the facts before us.

The judgment is affirmed.

*Judgment affirmed.*

HUNSICKER, P. J., and STEVENS, J., concur.