STURGIS-, Chief Judge.
Appellee, Shirley Marlene Baker, formerly Shirley Marlene Buscher, who was the plaintiff below in an action charging negligence, sued to recover damages for personal injuries sustained in an accident that occurred on the stage of the Daytona Beach municipal auditorium when the glass front of a water tank broke. In a companion action appellee’s father, Smith Buscher *805 sued to recover damages alleged to result from loss of his daughter’s services during minority and moneys laid out for her medical care. The defendants in each suit were: City of Daytona Beach, the owner of the auditorium, Lewis Meadows, O. R. Appenzellar, W. R. Appenzellar, and L. H. Meadows, partners d/b/a Service Paint and Glass, who installed the glass front of the water tank. Their answers denied negligence as charged, and as an affirmative defense alleged contributory negligence on the part of Miss Buscher. The suits were con-0 solidated and upon trial the jury returned a verdict of $15,000 for Shirley Marlene Buscher, and a verdict of $2,500 for Smith Buscher, both against the defendant City of Daytona Beach, and it appeals from the judgments entered thereon. The jury returned a verdict in each suit in favor of the defendant partners d/b/a Service Paint and Glass, and plaintiffs cross appeal from the judgment entered thereon.
At the conclusion of all the evidence the defendant city in each suit moved the court for a directed verdict on the salient grounds, in substance, that the evidence was insufficient to support a verdict for the plaintiff, which motion was denied. Thereupon plaintiffs severally moved the court for directed verdicts as to the question of liability on the salient grounds, in substance, that the evidence conclusively established liability of defendants as a matter of law, which motion was also denied. The parties have assigned as error the denial of their respective motions. While this opinion and judgment deals specifically with the appeal and cross appeal in the suit of Shirley Marlene Baker, nee Buscher, the discussion and conclusions are applicable to the separately reported suit of her father.
The question of the city’s liability depends on two factors: (1) whether the relation between the city and plaintiff was such as to cast on the former a duty to protect the latter against the injury she sustained as a result of the defective stage property; (2) whether independent of any such relationship the injury was the result of negligence on the part of a city employee acting within the scope of his employment. Both factors in this case depend exclusively upon the evidence and since none was presented by the city it is interpreted in the aspect most favorable to the plaintiff-appellee.
The pageant was produced under the exclusive management and control of the Daytona Beach Junior Chamber of Commerce, which leased the auditorium from the city, made a charge for admission and applied the proceeds to its exclusive account. Young ladies seeking the mythical title of “Miss Florida” were entered in the pageant under the sponsorship of the Junior Chambers of Commerce of various Florida cities. Each was required to furnish and have on hand the stage properties required for such exhibition as she would give in the talent phase of the contest. When the accident occurred the appellee, as “Miss Orlando,” representing the Orlando Junior Chamber of Commerce, was rehearsing her part in the pageant. The Sanford Junior Chamber of Commerce had caused the tank to be constructed at its direction and expense for use by its entry in giving an underwater swimming exhibition.
The only connection of the city with this unfortunate accident was: (a) The city owned the premises where the accident occurred; (b) answering an inquiry of the Sanford Junior Chamber of Commerce, it advised that the stage of the auditorium would support the tank and content, together with a truck upon which it was to be loaded and installed on the stage; (c) persons leasing or using the auditorium were required to observe the city’s rules governing its use, none of which directly related to the type or standards of stage properties; (d) at the time the truck, with the steel framework of the tank located in place thereon,[1] was installed on the stage, but *806 prior to installation of the glass front by Service Paint and Glass, a city employee required the representatives of the Sanford Junior Chamber of Commerce to shore up the truck so the weight would be evenly distributed upo-n filling the tank with water, and also required the gasoline to be taken out of the gas tank of the truck so as to reduce the fire hazard; (e) one of the city employees advised the Sanford representatives about putting a drain on the water tank; (f) a block and tackle provided and used by Service Paint and Glass to install the glass front of the tank was employed by connecting it to the grid floor above the stage in the presence of a person employed by the city as maintenance engineer of the auditorium, which employee also provided the fire hose of the auditorium for use by the representatives of the Sanford Junior Chamber of Commerce in filling the tank; (g) while the tank was being filled, this employee saw some of the mastic (a substance used to chink the glass and steel where it connected in the tank) oozing out from the connecting edges, and noticed that the water was commencing to leak at these points, whereupon he informed one of the Sanford men, engaged in filling the tank, that the tank was getting full and that they had better look at it; (h) after the glass broke the city sent a crew from the city yards who helped clean up the auditorium in preparation for the pageant scheduled to be given that evening. It is upon these facts alone that plaintiff relied for recovery in the circuit court and for af-firmance here.
Plaintiff’s uncontested proofs conclusively establish that the city leased the auditorium to the Daytona Beach Junior Chamber of Commerce for the time required and the purposes of the pageant. Not only is this the direct testimony of one of plaintiff’s witnesses, but it is adequately supported by other facts and inferences reasonably to be drawn therefrom, indicating that the city relinquished to the tenant complete possession of the auditorium. The fact that the city’s maintenance engineer was in and about the premises and that he rendered courtesies to the lessee and its invitees is immaterial. There is no evidence that he or any other employee of the city negligently performed or negligently failed to perform any duty owed to the plaintiff, who was the invitee of the tenant.
Having determined that the relation of landlord and tenant existed between the city and the Daytona Beach Junior Chamber of Commerce, and that plaintiff was the invitee of the latter, it follows that the duty of the defendant city to’ the plaintiff must be resolved according to the principles of law applicable to the relation of a landlord to an invitee of his tenant, and in so determining we adhere to the precedents of our supreme court in treating the city in the same manner as a private person.
Where a lessee is in possession, occupancy, and control of premises which are in good condition when leased, the lessor is not liable in damages for injuries to third persons caused by defects in the premises. Simms v. Kennedy, 74 Fla. 411, 76 So. 739, L.R.A.1918C, 297. A priori, in the absence of a special undertaking, a city leasing its municipal auditorium is not liable for injuries to third persons caused by latent defects in stage properties. In so holding, we are not unmindful of the general rule to the effect that municipal corporations are liable to the same extent as private persons for damages resulting from the negligent performance or negligent failure to perform proprietary functions, and that in the operation and maintenance of playgrounds, recreation areas, and similar facilities a city exercises a proprietary function. Woodford v. City of St. Petersburg, Fla., 84 So.2d 25; Bray v. City of Winter Garden, Fla., 40 So.2d 459; Pickett v. City of Jacksonville, 155 Fla. 439, 20 So.2d 484; Ide v. City of St. Cloud, 150 Fla. 806, 8 So.2d 924; Salevan v. Wilmington Park, 6 Terry 290, 45 Del. 290, 72 A.2d 239, 16 A.L.R.2d 1450; 38 Am.Jur., Municipal Corporations, Sec. 607. We have also duly considered the holding in Hargrove v. Town of Cocoa *807 Beach, Fla., 96 So.2d 130, in which our supreme court receded from decisions holding a municipal corporation immune from liability for the torts oí its employees while acting within the scope of employment. These authorities do not apply to the case on review for the simple reason that negligence within the meaning of the rules governing such liability was not shown to exist.
The facts in this case are similar to those in Chupek v. City of Akron, 89 Ohio App. 266, 101 N.E.2d 245, 248 in which the city of Akron, owner of a stadium and enclosure used for athletic events, midget automobile racing, and other kinds of public entertainment, leased the premises under an arrangement by which the sound and lighting systems were operated by the city at its expense, and lessee paid a minimum rental or percentage of receipts from patrons, whichever sum was greater. A paid patron, while in the area provided for seating the audience, was killed when struck by a part of a racing automobile. The city was charged with negligence in failing to provide protective devices for the spectators, and in permitting the racing cars to be operated at dangerous and negligent rates of speed, with knowledge that these conditions were highly dangerous to the spectators. In affirming a directed verdict and judgment in favor of the city, the appellate court held, and we agree:
“ * * * liability in tort for injury or damage to an invitee of a lessee whose possession of the premises is complete, does not attach to a lessor when a defect in the premises comes into existence during the continuance of the lease, or when a dangerous condition arises due solely to the ztse to zvhich the leased premises are put by a lessee. (Emphasis supplied)
* * * * * *
“ * * * The city acted solely in a proprietary capacity; no joint participation in the staging of the exhibition is shown to exist; the relation of landlord and tenant was created, and the city as landlord is entitled to such immunities as the law * * * gives tO' that legal status.”
Appellee cites Bland v. City of St. Louis, 349 Mo. 597, 162 S.W.2d 822, wherein plaintiff recovered for injuries received from a faulty elevator in a building leased by the city to a motor company. The facts are distinguishable from the case on appeal because the city retained possession of and maintained offices on one floor of the building, and by its lease covenanted to maintain the elevators.
In City of Madisonville v. Poole, Ky., 249 S.W.2d 133, also relied upon by appellee, the city did not challenge the proposition of proprietary liability for negligence of its employees whose duty it was to prepare the premises at the clubhouse where plaintiff was injured while attending a party, but denied negligence. The judgment against the city was affirmed by a divided court on the premise that the city’s negligence was established by the testimony of its custodian to the effect that it was his duty to prepare the premises in proper condition for the party, that he prepared the side entrance for use but did not inspect or prepare the front entrance, where plaintiff fell, because he had not expected it to be used and did not think there was any ice there. These facts are clearly distinguishable from the case on appeal in which there is no showing that the landlord retained any control over the leased premises inconsistent with its proprietary rights, none of which were violated.
The case on appeal is distinguishable also from the facts in Oxford v. Leathe, 165 Mass. 254, 43 N.E. 92, in which the lessor, owner of a building, was held liable for personal injuries sustained from the collapse of a platform forming part of the leased premises, which platform was at the top of a flight of stairs leading to the entrance of the leased building. There it was the dangerous and defective structure, rather than a stage property used by lessee or its invitees, that caused the injury.
*808 Upon carefully reviewing the entire evidence, which need not be further detailed, we were immediately confronted with the anomaly of a verdict having been rendered against the city, with insufficient evidence to support it, by the same jury that returned a verdict in favor of the partners d/b/a Service Paint and Glass, as to whom the evidence would have supported an unfavorable verdict. This is not to say that we impugn the verdict in favor of the defendant partners; on the contrary, there is ample evidence to support it and it is elemental that under such circumstances an appellate court will not pit its judgment against that of the jury.
In Jacksonville Coach Company v. Early, Fla., 78 So.2d 369, it was held that a jury verdict cannot rest on “a mere probability or guess, arbitrary action, whims or caprice.” To the same effect see Golden v. Morris, Fla., 55 So.2d 714, 715. And while this court is without authority to substitute its judgment for that of a jury, it is our duty to set aside the verdict and judgment if, as a matter of law, there is insufficient evidence to support it. Renuart Lumber Yards v. Levine, Fla., 49 So.2d 97. We find these authorities govern the verdict and judgment against the appellant, that the evidence before the jury was totally insufficient, as a matter of law, to support the verdict against the City of Day-tona Beach, and that under these circumstances it was the duty of the trial court to direct a verdict in its favor. Swilley v. Economy Cab Co. of Jacksonville, Fla., 56 So.2d 914. Hence the assignment of error based on its refusal to do so is well taken.
In view of our conclusions it is unnecessary to discuss the remaining assignments of error.
The judgment against the City of Day-tona Beach is reversed and the judgment in favor of the defendants d/b/a Service Paint and Glass is affirmed.
WIGGINTON, J. and HUGH M., A. J., concur. TAYLOR,

. The steel framework was constructed by Stine Machine & Supply Co., originally a party defendant, in whose favor a summary judgment was entered.