Bergan, J. (dissenting).
While reading a newspaper on the patio of his home on Sunday, June 30, 1963, plaintiff Wilbur Nussbaum was struck by a golf ball driven by defendant Paul Lacopo from the course of defendant Piandome Country Club, Inc., which adjoins plaintiff’s property.
Plaintiff suffered a concussion of the brain and other residual injuries and was hospitalized four weeks. The complaint was dismissed at the end of plaintiff’s case for failure to establish prima facie that his injury was due to the negligence of either defendant.
The line dividing plaintiff’s property and the golf course ran generally east and west. The fairway from the 13th tee, which also ran east and west, was some 70 feet wide and 308 yards long. Between the north side of the fairway and plaintiff’s property line was a rough of 20 to 30 feet. This was less than half the width of the fairway.
The rough was made up of brush and tall trees which tended to form a natural barrier. A ball “properly driven” from the 13th tee in the direction of the green, as plaintiff states in this court, “would travel parallel to the southerly edge of plaintiff’s back yard”.
The proof of the plaintiff is that over a long period of time, from 1956 to 1963, golf balls hit from the 13th tee fell upon plaintiff’s property, notwithstanding the screening effect of the 20- 30-foot rough on the north side of the fairway. This occurred from two to three times a week.
The owner of the residential property adjoining plaintiff’s land to the east, and hence farther away from the 13th tee *321 than plaintiff, testified that for “ a period of several years ” before this accident golf balls fell also on his property.
Plaintiff’s wife testified in some additional detail to golf balls coming from the course and falling on the property and said that she told Richard Swiggert who “patroled the course on a motor bike ” that “ You ought to do something about these balls ”.
If a golf course adjoining private residential property is so operated that injury to neighbors is foreseeable in the exercise of reasonable care, a cause of action for such injury ought to exist on recourse to the ordinary standards of negligence.
As Chief Judge Andrews observed in Booth v. Rome, Watertown & Ogdensburg Term. R. R. Co. (140 N. Y. 267, 273), the use of one’s own land for a lawful purpose requires the “ exercise of a degree of care measured by the danger ’ ’ to prevent injury to his neighbor.
When a fairway is maintained very close to residential property adjoining the course, precautions in design and location, in the form of play, or in protective devices may be required as a safeguard against injury.
If a jury were to find in this case that in spite of the apparent barrier of the 20- 30-foot rough, balls regularly dropped from the 13th tee on the two adjoining residential properties, it might find the club had failed to exercise care appropriate to that potential danger.
It might also find notice to the club of the situation alone from the frequency over a period of years in which balls were so driven as to get beyond the rough north of the fairway.
Constructive knowledge of these occurrences could be inferred from the kind of supervision that would normally be expected. The jury might find, as well, that actual knowledge had come to the club from Mr. Swiggert who ‘ ‘ patroled the course ’ ’, apparently to observe what went on.
The right to safety of a man sitting on the patio of his home would seem at least as great as that of the traveler on a highway considered in Gleason v. Hillcrest Golf Course (148 Misc. 246) and Townsley v. State of New York (6 Misc 2d 557). In Townsley the fairway ran parallel with and adjacent to the highway and golf balls had landed on or across the highway. *322 The Court of Claims allowed recovery to a claimant injured by a golf ball while using the highway.
There is similarity, too, in those cases where persons outside the ground of play have been struck by a baseball (see, e.g., Lamm v. City of Buffalo, 225 App. Div. 599; Jones v. Kane & Roach, Inc., 182 Misc. 37; Salevan v. Wilmington Park, 45 Del. 290).
The club argues also that Lacopo, then 15 years old, was not a member, had no legal right to play the course and was a trespasser. Concededly he drove the ball which struck plaintiff. There is sufficient proof that Lacopo was playing the course so regularly and openly that his continued use of it might spell out a constructive permission by the club.
Lacopo testified, in the deposition taken and read by plaintiff, that he had been playing the course all summer (“ Maybe every other night”); that he knew the location of plaintiff’s house in relation to the tee, and that he could see the house from the tee. He testified that it “was really a poor shot”.
If in sight of a residence a player makes such a poor shot, described in the club’s brief here as “ a very bad shot ’ ’, and injury results to someone having no connection with the game, a cause of action seems established against such a player.
A play can be so bad that when injury results it is permissible for a jury to say such a player is negligent.
The majority opinion seems to suggest that the social benefit of adjacency to a country club requires a man to accept without protest being hit on the head by a golf ball.
Plaintiff owned his own home and had quite as much right to occupy it safely as defendant country club had to use its land for a game. No social or other benefit has come to plaintiff because the club owned adjacent land. This record demonstrates, on the contrary, not only a disadvantage but a safety hazard.
The order should be reversed and a new trial ordered.
Chief Judge Fuld and Judges Scileppi and Jasen concur with Judge Burke ; Judge Bergan dissents and votes to reverse in a separate opinion in which Judges Breitel and Gibson concur.
Order affirmed, without costs.